**Ronald Owen POOK, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, State Board of Auctioneer Examiners, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 9, 1999.

Decided June 16, 1999.

---

6. *See Woodland Hills School District,* 22 PPER ¶ 22026 (Final Order, 1991).

Lance J. Nelson, West Chester, for petitioner.

Bernadette Paul, Harrisburg, for respondent.

Before KELLEY, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

KELLEY, Judge.

Ronald O. Pook (Petitioner) petitions for review of the order of the Pennsylvania State Board of Auctioneer Examiners (Board) denying his application for an apprentice auctioneer license under the provisions of the Auctioneer and Auction Licensing Act (Act).[1] We affirm.

On December 30, 1996, Petitioner submitted an application for an apprentice auctioneer license to the Board. By letter dated March 19, 1997, the Board denied the application based on the discretion conferred to the Board pursuant to section 28(a) of the Act.[2] In the letter, the Board specifically noted Petitioner's 1987 federal conviction under Section 1 of the Sherman Anti–Trust Act[3] for bid pooling, and the Board's revocation of his previous apprentice auctioneer license on June 14, 1990 pursuant to section 26(a) of the Act.[4] The Board also noted that pursuant to section 9124(c)(1) of the Criminal History Record Information Act (CHRIA)[5] and section 3(c) of the Act[6], it may refuse to grant a license where an applicant has been convicted of committing a felony or a misdemeanor related to the practice of auctioneering. Petitioner filed a timely appeal of the denial of his application with the Board.

On September 8, 1997, a formal hearing was conducted on Petitioner's appeal before the Board. During the hearing, Petitioner presented evidence of his qualifications to be a licensed auctioneer. In addition, Petitioner submitted character

---

1. Act of December 22, 1983, P.L. 327, *as amended*, 63 P.S. §§ 734.1–734.34.

2. Section 28(a) of the Act states:

   (a) **General rule.**-After the revocation of any license, no new license may be issued to the same licensee within a period of at least one year from the date of the revocation nor, except in the sole discretion of the board and subject to the conditions of this act, at any time thereafter.
   63 P.S. § 734.28(a).

3. 15 U.S.C. § 1. Section 1 states in pertinent part:

   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony...
   *Id.*

4. Section 26(a) of the Act states:

   (a) **Revocation or suspension of license for committing crime.**-Where, during the term of any license issued by the board, the licensee is convicted in a court of competent jurisdiction in this or any other state of forgery, embezzlement, obtaining money under false pretenses, extortion, criminal conspiracy to defraud or other like offense

and a duly certified copy of the record in the proceeding is filed with the board, the board shall revoke or suspend the license issued to the licensee.
63 P.S. § 734.26(a).

5. Section 9124(c)(1) of the Criminal History Record Information Act states:

   (c) **State action authorized.**-Boards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions may refuse to grant or renew, or may suspend or revoke any license, certificate, registration or permit for the following causes:
   (1) Where the applicant has been convicted of a felony.
   18 Pa.C.S. § 9124(c)(1).

6. Section 3(c) of the Act states:

   (c) **Qualifications in general for license.**-Licenses shall be granted only to persons who have a good reputation for honesty, truthfulness, integrity and competence to transact the business of auctioneer or apprentice auctioneer in a manner as to safeguard the interest of the public and only after satisfactory proof of these qualifications has been presented to the board as required by regulation.
   63 P.S. § 734.3(c).

evidence in an attempt to establish that he regained a reputation for honesty, truthfulness, integrity and competence in his community. The evidence included seven letters of reference from individuals who knew Petitioner in both a personal and professional capacity over the past ten years.

The Board issued an adjudication and order on July 30, 1998 denying Petitioner's application for licensure as an apprentice auctioneer. In the adjudication, the Board again noted the discretion conferred by section 28(a) of the Act, and the authority to refuse to issue a license to Petitioner under section 9124(c) of the CHRIA.[7] Although the Board considered that 8 years had passed since the revocation of Petitioner's previous license, it determined that Petitioner did not convince the Board that he possessed the necessary qualifications to qualify for a license under section 3(c) of the Act, or that he would safeguard the public interest as an apprentice auctioneer if he were granted a license. In short, the Board concluded that the seriousness of Petitioner's prior conviction outweighed the character evidence he presented in support of the application. As a result, the Board issued an order denying Petitioner's application for an apprentice auctioneer license. Petitioner then filed the instant appeal in this court.

In this appeal, Petitioner claims: (1) the Board's denial of his application for an apprentice auctioneer license constitutes a violation of his rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution [8] because similarly situated individuals were not denied licenses as apprentice auc-

tioneers; (2) the Board erred as a matter of law when it concluded that he did not provide satisfactory proof of his qualifications to be licensed as an apprentice auctioneer as required by section 3(c) of the Act; (3) the Board erred as a matter of law by basing its denial of his application for an apprentice auctioneer license on a conviction which occurred more than five years prior to the filing of the application; and (4) the Board erred as a matter of law when it improperly applied sections 20(a)(4) and 26(a) of the Act which are intended only to apply to the suspension and/or revocation of licenses, and not the refusal to grant an application for a new license.

■ We initially note that our scope of review in this matter is limited to determining whether Petitioner's constitutional rights were violated, whether the Board committed errors of law, and whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Bunch v. State Board of Auctioneer Examiners,* 152 Pa.Cmwlth. 616, 620 A.2d 578 (1993), *petition for allowance of appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994).

In this appeal Petitioner first claims that the Board's denial of his application for an apprentice auctioneer license constitutes a violation of his rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because similarly situated individuals were not denied licenses as auctioneers. In particular, Petitioner claims that several hundred auctioneers were convicted under the Sherman Anti–Trust Act for bid

---

7. The Board also made reference to sections 20(a)(4) and 26(a) of the Act to support the proposition that Petitioner's conviction for bid-pooling is a "like offense" to forgery, embezzlement, obtaining money under false pretenses, extortion, criminal conspiracy to defraud, and is particularly pertinent to the practice of auctioneering. Section 26(a) of the Act provides that the Board shall revoke or suspend a license where, during the term of a license, the licensee is convicted of forgery, embezzle-

ment, obtaining money under false pretenses, extortion, criminal conspiracy to defraud or "other like offense". 63 P.S. § 734.26(a).

8. The Fourteenth Amendment to the United States Constitution states, in pertinent part that "[n]o state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

pooling in 1990 and, in rendering its decision on Petitioner's application, the Board ignored its previous, less severe actions taken against other auctioneers convicted for bid-pooling.

■ We first note that Petitioner failed to raise this equal protection claim in his appeal to the Board.[9] As a result, this claim is deemed waived for purposes of appeal. *See* Pa.R.A.P. 1551(a); *Springfield Township v. Pennsylvania Public Utility Commission,* 676 A.2d 304 (Pa. Cmwlth.1996) (Issue not raised before nor considered by the Pennsylvania Public Utility Commission was waived and would not be considered on appeal.) Moreover, this claim is meritless.

■ As this Court has recently stated:

Traditional equal protection standards require a showing that the system of enforcement had a "discriminatory effect" and was "motivated by a discriminatory purpose". In order to state an equal protection claim for unequal or discriminatory enforcement the party claiming such discrimination must show that "persons similarly situated" have not been treated the same that "the decisions were made on the basis of an unjustifiable standard 'such as race, religion, or other arbitrary classification' or to prevent the [party's] exercise of a fundamental right".

*Correll v. Department of Transportation, Bureau of Driver Licensing,* 726 A.2d 427, 431 (Pa.Cmwlth.1999) (citations omitted).

Petitioner bases his equal protection claim on unsubstantiated allegations that other individuals who purportedly committed the same offense have been treated differently by the Board. Petitioner utterly fails to demonstrate that the Board was motivated by a discriminatory purpose, or that the Board's actions were based on an unjustifiable standard such as race, religion, or other arbitrary classification or to prevent Petitioner's exercise of a fundamental right. As a result, Petitioner failed to demonstrate in any way that the Board's actions in this case violated his equal protection rights as guaranteed by the Fourteenth Amendment to the United States Constitution. *Id.*

■ Petitioner next claims that the Board erred as a matter of law when it concluded that he did not provide satisfactory proof of his qualifications to be licensed as an apprentice auctioneer as required by section 3(c) of the Act. In particular, he asserts that he possesses the necessary qualifications for obtaining an auctioneer license. He notes that he submitted seven letters of reference from individuals who vouched for his reputation for integrity, honesty and commitment to the community, and he introduced the testimony of an individual who has been an auctioneer for over twenty years. Petitioner further avers that the Board abused its power when it capriciously, and in bad faith, denied the application for licensure. He notes that the Board ignored the fact that he had participated in bid pooling two to three years prior to his receipt of his auctioneer license.

As previously noted, section 28(a) of the Act states that "[a]fter the revocation of any license, no new license may be issued to the same licensee within a period of at least one year from the date of the revocation *nor, except in the sole discretion of the Board and subject to other conditions of this Act, at any time thereafter.*" 63 P.S. § 734.28(a) (emphasis added). Thus, pursuant to this section, it was within the sole discretion of the Board as to whether or not a new apprentice auctioneer license should issue to Petitioner. *Id.*

**9.** Although he alleged that the Board had treated other auctioneers differently, Petitioner did not raise an equal protection claim in his appeal to the Board. Rather, in his appeal, Petitioner limited his constitutional claims to the purported violation of his due process rights.

As the Pennsylvania Supreme Court stated long ago:

> By a host of authorities in our own and other jurisdictions it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion.

*Blumenschein v. Housing Authority of Pittsburgh*, 379 Pa. 566, 572–573, 109 A.2d 331, 334–335 (1954), *cert. denied*, 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955).

In denying Petitioner's application in this case, the Board stated the following:

> The Board's denial of [Petitioner's] license application is not arbitrary or capricious. His apprentice auctioneer license was revoked by the Board in 1990, following his felony conviction for a serious offense: bid-pooling under Section 1 of the Sherman Anti–Trust Act. [Petitioner] was convicted of conspiring with other antique dealers to refrain from bidding against each other at public auctions. The goal of the conspiracy was to keep prices down and restrain competition. As a result of the conspiracy, [Petitioner] was able to purchase antiques at artificially low prices, while both the compensation paid to consignors and the commissions paid to auctioneers fell correspondingly.

> The Board views bid-pooling as one of the most egregious offenses possible against the auction process, as it subverts the competitive bidding which lies at the heart of auctions. It injures consignors, auction attendees and auctioneers.

> Although the Board considered the eight years that have passed since the revocation of [Petitioner's] apprentice auctioneer license, [Petitioner] did not convince the Board that he now possesses the necessary qualifications under Section 3(c) or that he would safeguard the public interest as an apprentice auctioneer if he were granted a license. The seriousness of the conviction outweighs the evidence of character that he presented in support of his application.

> As an apprentice auctioneer, [Petitioner] respected other bid-poolers and felt complimented when invited to join a pool. Even now, the Board believes [Petitioner] has not shown a recognition of the gravity of the offense . . .

Board Opinion, pp. 5–6.

Based on the foregoing, it is clear that the Board properly considered all of the evidence presented at the hearing in denying Petitioner's application for a license. That this Court may have reached a different conclusion based on that evidence is of no moment; without a demonstration of bad faith, fraud, capricious action or abuse of the Board's power, we will not inquire into the wisdom of the Board's actions. *Blumenschein.*

Moreover, the Board's actions are specifically authorized under sections 9124(c)(1) of the CHRIA which provides that the Board may refuse to grant a license to an applicant who has been convicted of a felony. *See* 18 Pa.C.S. § 9124(c)(1). Because bid-pooling is graded as a felony and relates closely to the practice of auctioneering, the Board appropriately exercised its discretion in denying

Petitioner's application pursuant to the provisions of section 28(a) of the Act and section 9124(c)(1) of the CHRIA.

■ Petitioner next claims that the Board erred as a matter of law by basing its denial of his application for an apprentice auctioneer license on a conviction which occurred more than 5 years prior to the filing of the application. In particular, he alleges that pursuant to sections 20(a)(4) and 28 of the Act, the length of time between a conviction and an application for new license must be considered by the Board in determining whether a license should be issued. Because these sections note particular periods of time before a license can be issued, he argues that the General Assembly intended that the Board consider the passage of time in reviewing an application. He contends that the Board's arbitrary failure to consider such passage of time is an abuse of its discretion and grounds for reversal.

As noted above, section 20(a)(4) of the Act states, in pertinent part:

(a) **General rule.**-The board may, upon its own motion, and shall, promptly upon the verified complaint in writing of any person setting forth specifically the wrongful act or acts complained of, investigate any action or business transaction of any person licensed by the board and may temporarily suspend or permanently revoke licenses issued by the board or impose a civil penalty not exceeding $1,000 at any time when, after due proceedings provided in this act, it finds the licensee to have been guilty in the performance or attempt to perform any of the acts prohibited to others than licensees under this act, as follows:

\*　　\*　　\*　　\*　　\*　　\*

(4) Within five years prior to the issuance of the license then in force, conviction in a court of competent jurisdiction in this or any other state or in Federal court of forgery, embezzlement, obtaining money under false pretenses, extor-

tion, conspiracy to defraud or other like offense or offenses.

63 P.S. § 734.20(a)(4).

In addition, section 28 of the Act states, pertinent part:

(a) **General rule.**-After the revocation of any license, no new license may be issued to the same licensee within a period of at least one year from the date of revocation nor, except in the sole discretion of the board and subject to the conditions of this act, at any time thereafter.

(b) **Criminal conduct.**-No license shall be issued by the board to any person known by it to have been, within five years, convicted of forgery, embezzlement, obtaining money under false pretenses, extortion, conspiracy to defraud or other like offense...

63 P.S. § 734.28.

■ In interpreting these provisions, we are required to construe the words and phrases according to their common and approved usage. Section 1903 of the Statutory Construction Act, 1 Pa.C.S. § 1903; *Odd Fellows Home of Pennsylvania v. Department of Public Welfare*, 56 Pa. Cmwlth. 115, 424 A.2d 961 (1981). Moreover, when the words of a statute are clear and unambiguous, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. Section 1921 of the Statutory Construction Act, 1 Pa.C.S. § 1921; *Borough of Glendon v. Department of Environmental Resources*, 145 Pa. Cmwlth. 238, 603 A.2d 226 (1992), *petition for allowance of appeal denied*, 530 Pa. 657, 608 A.2d 32 (1992). Thus, where the language of a statute is clear and free from all ambiguity, any further deliberation as to its meaning is unwarranted. *Meier v. Maleski*, 670 A.2d 755 (Pa.Cmwlth.1996), *aff'd*, 549 Pa. 171, 700 A.2d 1262 (1997).

With the foregoing in mind, it is clear that the provisions of sections 20(a)(4) and 28 of the Act do not support Petitioner's claims. Reading its provisions plainly, it is apparent that section 20(a)(4) permits the

Board to either temporarily suspend or permanently revoke a license where it determines that the licensee has committed one of the enumerated crimes in the 5 years preceding the issuance of the license. Likewise, reading its provisions plainly, it is apparent that section 28 precludes the Board from issuing a license to a licensee who has had his license revoked within the preceding year, or who has been convicted of one of the enumerated crimes within the preceding 5 years. After these periods of time have passed, section 28 grants the Board the sole discretion to issue or to refuse to issue a license to a particular applicant. In short, we will not accede to Petitioner's request that we read these provisions in a contorted manner, or add terms that are not specifically included therein.

Finally, Petitioner claims that the Board erred as a matter of law when it improperly applied sections 20(a)(4) and 26(a) of the Act which are intended to only apply to the suspension and/or revocation of licenses, and not the refusal to grant an application for a new license. In particular, Petitioner contends that these sections apply only to the suspension or revocation of a license, and not to individuals who apply for new licenses 5 years after a conviction.

However, it is clear that the Board did not rely upon sections 20(a)(4) or 26(a) of the Act in denying Petitioner's license. Rather, the Board made reference to these sections merely to support the proposition that Petitioner's conviction for bid-pooling is a "like offense" to forgery, embezzlement, obtaining money under false pretenses, extortion, and conspiracy to defraud, and is particularly pertinent to the practice of auctioneering. In the adjudication, the Board properly made reference to the discretion and power conferred under section 28(a) of the Act and section 9124(c)(1) of the CHRIA in denying Petitioner's application.

Accordingly, the order of the Board is affirmed.

*ORDER*

AND NOW, this 16th day of June, 1999, the order of the State Board of Auctioneer Examiners, dated July 30, 1998 at No. 97–64–01439, is affirmed.