**FURNIVAL STATE MACHINERY/TRANSAMERICA INSURANCE GROUP, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SLYE), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2000.

Decided Aug. 10, 2000.

James A. Mazzotta, Pittsburgh, for petitioner.

Lawrence R. Chaban, Washington, for respondent.

Before McGINLEY, Judge, LEADBETTER, Judge, and RODGERS, Senior Judge.

LEADBETTER, Judge.

█ In this case, we are asked to determine whether a cost containment statute directed at workers' compensation providers implicitly alters the Workers' Compensation Act's subrogation statute. We hold that it does not.

Claimant James Slye suffered a work-related injury on February 7, 1992, and subsequently required ankle replacement surgery. At the time, employer refused to pay for the surgery, claiming that it was not work related. Slye, not wishing to wait for a final determination, underwent the ankle replacement during the course of litigation, utilizing a separate third-party insurance plan which paid the medical provider $34,869.51, the full cost of the surgery. Subsequently, employer chose to accept liability and therefore agreed to reimburse Slye's third-party health insurance carrier. Employer's workers' compensation insurance carrier, however, only paid the third-party insurer $14,435.34. Slye's third-party insurer is now suing for the difference.

Under the "Act 44" amendment to the Workers' Compensation Act,[1] the legisla-

---

1. Act of June 2, 1915, P.L. 736, *as amended,*    77 P.S. § 531

ture has attempted to contain costs by limiting the amount which may be charged for workers' compensation expenses. Section 306(f.1)(3)(i) now provides in pertinent part:

> (3)(i) For purposes of this clause, *a provider shall not require, request or accept payment* for the treatment, accommodations, products or services in excess of one hundred thirteen per centum of the prevailing charge at the seventy-fifth percentile; one hundred thirteen per centum of the applicable fee schedule, the recommended fee or the inflation index charge; one hundred thirteen per centum of the DRG payment plus pass-through costs and applicable cost or day outliers; or one hundred thirteen per centum of any other Medicare reimbursement mechanism, as determined by the Medicare carrier or intermediary, whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services rendered . . . .

77 P.S. § 531(3)(i) (emphasis added). The Department of Labor and Industry then promulgated the following regulation to enact this new provision:

> (a) Generally, medical fees for services rendered under the act shall be capped at 113% of the Medicare reimbursement rate applicable in this Commonwealth under the Medicare Program for comparable services rendered. The medical fees allowable under the act shall fluctuate with changes in the applicable Medicare reimbursement rates for services rendered prior to January 1, 1995. Thereafter, for services rendered on and after January 1, 1995, medical fees shall be updated only in accordance with §§ 127.151—127.162 (relating to medical fee updates).

34 Pa.Code § 127.101(a). It is undisputed that the $14,435.34 paid by the workers' compensation insurer represents 113% of the Medicare reimbursement rate, as provided in Regulation 127.101.

Relying upon this regulation, the Workers' Compensation Judge (WCJ) disallowed any subrogation above the $14,435.34 paid. The WCJ held:

> I conclude as a matter of law that the third party carrier asserting a subrogation/ reimbursement claim against the worker's compensation carrier is not entitled to be reimbursed by the worker's compensation carrier in any amounts greater than those amounts allowed under Section 306(f.1)(3) of the Act; but that the third party carrier may have a cause of action to recover overpayments from the medical providers pursuant to the mandate of Sections 306(f.1)(3) and (7) of the Act.[2] It is apparent to me that the above-cited Section was intended to and does in fact limit the liability exposure of carriers who insure employers against liability for worker's compensation benefits, to those fees specified. I can find nothing in the statute or in the appellate caselaw which would support the claimant's argument to the effect that a party seeking subrogation/reimbursement is entitled to demand more than the claimant and medical providers were entitled to receive from the worker's compensation carrier.

WCJ's Opinion, at 4 (footnote added).

The Workers' Compensation Appeal Board (Board) reversed. In its opinion, the Board found that Section 306(f.1)(3) is not relevant to the current inquiry, as it is directed at providers, not insurers. Instead, the Board relied upon that portion of the Act upon which the third party insurer based its claim for subrogation—

---

2. Section 306(f.1)(7) provides:

(7) A provider shall not hold an employe liable for costs related to care or service rendered in connection with a compensable injury under this act. A provider shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer.
77 P.S. § 531(7).

Section 319 of the Act—which provides in relevant part:

> Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award *to the amount so paid,* if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

77 P.S. § 671 (emphasis added). The Board found that under the plain language of this section, the third-party insurer is entitled to the full amount paid, even if that amount exceeds 113% of the Medicare reimbursement rate. The workers' compensation insurance carrier then appealed to this court.

 We agree with petitioner that the purpose and spirit of Act 44's cost containment provisions are best furthered by limiting subrogation under Section 319 to the amounts specified in Section 306(f.1)(3). Nevertheless, we cannot agree that the purposes of Section 306(f.1)(3), however salutary they may be, control the outcome in this case, in the face of specific language to the contrary in Section 319. Petitioner's primary argument is that the third-party health insurer should be found to "stand in the shoes" of the claimant. Since a workers' compensation claimant is only entitled to receive medical treatment for a work-related injury pursuant to the Workers' Compensation Act, an insurance carrier should only recover through subrogation what the workers' compensation claimant is entitled to receive in payment. Petitioner's brief, at 8.

However, the cost containment provisions of Section 306(f.1)(3) do not limit what a claimant may recover, nor limit the medical payment obligation of employers and their compensation carriers. By its terms that section limits only what a medical provider may charge when it is to be compensated by an employer under the Act. Here, the provider did not submit its charges for payment pursuant to the terms of the Act, but pursuant to a contract of insurance unconnected with the Workers' Compensation system. In that situation, the insurance contract controls the charges for which medical providers may be compensated, not Section 306(f.1)(3).[3] Petitioner's policy argument and the analysis of the WCJ might nonetheless prevail were it not for the plain language of Section 319. As noted above, that section specifically provides that the payor shall be subrogated "in the amount so paid."

Accordingly, the order of the Workers' Compensation Appeal Board is affirmed.

## ORDER

AND NOW, this 10th day of August, 2000, the order of the Workers' Compensation Appeal Board in the above captioned matter is affirmed.

---

**3.** We emphasize that providers are not free to coverage-shop under the terms of the Act. The full reimbursement provision of Section 319 applies only where the provider *must* submit its charges to the third party payor because the employer or its Workers' Compensation carrier has refused to pay for treatment on the ground that the injury is not compensable.