**VILLANOVA UNIVERSITY,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (MANTLE),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 20, 2001.

Decided Aug. 30, 2001.

Michael D. Schaff, Philadelphia, for petitioner.

Mark L. Mazzanti, Paoli, for respondent.

Before DOYLE, President Judge, SMITH, Judge, and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Villanova University (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed a decision of the Workers' Compensation Judge (WCJ) granting the fatal claim petition filed by Julia Mantle (Claimant) who maintained that the death of her husband, Jason Cardelli (Deceased) resulted from activities at work. The Board also affirmed the WCJ's decision denying Claimant's penalty petition and directing Employer to reimburse a third party medical insurer. We affirm.

Claimant filed a fatal claim petition alleging that Decedent, an astronomy professor, died as a result of a heart attack caused by his work activities on May 14, 1996. The WCJ held a hearing at which Claimant and Employer presented evidence. Professor Sophia testified on behalf of Claimant that on May 14, 1996 at 11:30 a.m. he and Decedent attended a picnic sponsored by Employer. Upon arriving at the picnic, Decedent ate and then participated in a balloon tossing contest. Decedent and Professor Sophia then walked back to the astronomy building. During the walk, Decedent complained of fatigue and tightness in his chest and was required to stop. After resting, Decedent resumed the walk back to the building but again needed to stop. Professor Sophia testified that Claimant looked pale and sweaty. The two men eventually arrived at the building and Decedent went back to his office. The next time Dr. Sophia saw Decedent, Decedent had collapsed at the building entrance while in the process of leaving. Decedent, who was sweating and shaking, was taken to the hospital where he died.

According to Claimant, Decedent was forty years old, smoked one and a half packs of cigarettes a day and had recently complained of fatigue. Claimant testified that as a hobby, Decedent enjoyed doing repairs to his house. On cross-examination Claimant testified that this activity was more physical than his duties with Employer.

Claimant also introduced the deposition testimony of Dr. Nicholas DePace, a board certified cardiologist and internist. Dr. DePace testified that based on Decedent's history and laboratory data, Decedent suffered a heart attack due to closure of his right coronary artery. This occurred because plaque in the artery ruptured which then formed a blood clot and closed the artery. Although Decedent's high cholesterol and smoking predisposed him to the formation of plaque, Dr. DePace testified that such did not cause the rupture of the plaque. Dr. DePace opined that the incident of walking to and from the picnic, approximately 800 yards, especially after eating and participating in recreational activity triggered the rupture of the plaque which resulted in Decedent's death.

In opposition to the fatal claim petition, Employer introduced the deposition testimony of Dr. Peter Kowey, who is board certified in cardiovascular medicine. Dr. Kowey opined that Claimant's physical activities on the day of his death were not a contributing factor to his fatal heart attack

because the clogging of an artery is not an effort-related event.

The WCJ credited the testimony of Claimant's witnesses and concluded that Decedent suffered a heart attack, which was directly related to his work activities while in the course of his employment. As such, the WCJ granted the fatal claim petition but denied the penalty petition. The WCJ also ordered Employer to reimburse Independence Blue Cross all monies Independence Blue Cross had paid to health care providers for medical treatment rendered to Decedent. Employer appealed to the Board which affirmed the decision of the WCJ.

On appeal to this court, Employer initially argues that the WCJ and Board erred in granting Claimant's fatal claim petition. Employer specifically takes issue with the testimony of Dr. DePace, who the WCJ found credible. Employer argues that the record does not support Dr. DePace's opinion that the activities engaged in prior to Decedent's death, namely the walking, was causally related to Decedent's death. We disagree.

■ Dr. DePace testified that Decedent had plaque in his coronary arteries, which ruptured while Decedent was walking. Dr. DePace stated the following:

Q. Doctor, what activities in particular caused the plaque rupture?

A. Based on the temporal sequence of the patient's walking, especially after eating and participating in recreational activity, it's my opinion that if one was to look at the distance covered in the walking, approximately 800 yards, 200 to the picnic place, the activity at the recreation and walking another 400, it's a total of 800 yards, is equivalent to walking up and down a football field at various times, eight times in a course of a half a day or several hours. The time span it occurred within is a significant amount of walking that I would have precluded an individual with coronary activity over the prior week from doing.

And I believe strongly that this type of activity precipitated a plaque rupture in a patient who should have been sedentary at that particular time during this clinical course. And that I can state within a reasonable degree of medical certainty.

(R.R. at 196a–1972.) Dr. De Pace further opined:

Q. Was the myocardial infarction the cause of death in your opinion?

A. Absolutely. it was not the cause—obviously, the exertion which precipitated the myocardial infarction was not the cause of his underlying coronary artery disease. He had rust on his pipes, granted, and in fact that's a necessary prerequisite for him to have had that underlying disease for a heart attack to occur with a plaque rupture. So it did not cause the underlying heart disease the high cholesterol and smoking did. *But what caused his death, his heart attack, his coronary event was a plaque rupture which occurred simultaneously when he was exerting himself in a walking situation almost 400 yards on the way back.* That's how it started.

(R.R. at 201a–202a.)(Emphasis added.)

Employer argues that similar to *Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (Herder)*, 765 A.2d 414 (Pa.Cmwlth. 2000), *petition for allowance of appeal denied,* — Pa. —, 781 A.2d 151 (2001) 2001 Pa. LEXIS 1231, there is a lack of evidence in the record to causally relate Decedent's death to his work. In *Herder,* the claimant filed a fatal claim petition alleging that her husband's work-injury, which included a knocked out tooth and broken teeth as a result of being punched

in the face, led to his depression and resultant suicide. The claimant's medical expert testified that the decedent's work injury was a substantial factor in his suicide. The WCJ and Board awarded benefits. This court reversed concluding that the medical testimony was incompetent because of a lack of evidence in the record for the expert to base his opinion. There was no evidence in the record connecting the claimant's work-injury to his suicide.

■ Initially, we observe that *Herder* is distinguishable because it involved a suicide. In such a case, it must be shown that the work-related injury caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and the disturbance resulted in the employee's death. *Id.* 765 A.2d at 416. Moreover, unlike the expert in *Herder,* there were facts in the record upon which Dr. DePace was able to connect the long walk that Decedent endured to his heart attack. Namely, Dr. DePace opined that the walk consisted of approximately 8 football fields and that as Decedent walked back to the building, he complained of feeling ill and needed to take a rest and catch his breath on two occasions. Contrary to Employer's contention, Decedent not only made general complaints of feeling ill, but also complained of tightness in his chest according to his companion, Dr. Sophia. (R.R. at 117a.) Although Employer maintains that Decedent's activities on the day of his death were merely coincidental and did not contribute to his death, Dr. DePace opined otherwise. It was not just walking as Employer describes it but the length of the walk, along with the other activities that triggered Decedent's heart attack. As previously stated Dr. DePace opined that "his coronary event was a plaque rupture which occurred simultaneously when he was exerting himself in a walking situa-

tion almost 400 yards on the way back." (R.R. at 202a.) In this case, Dr. DePace's opinion that Decedent suffered a heart attack due to work activities is based on evidence in the record.

Finally, Employer argues that the WCJ and Board erred in ordering that it reimburse Independence Blue Cross in the amount of $10,765.00, the full amount Independence Blue Cross paid to health care providers for treatment to Decedent. Employer maintains that in accordance with Section 306(f.1)(3)(i) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(3)(i), "a provider shall not require, request or accept payment" for treatment which exceeds 113% of the Medicare reimbursement rate. Thus, Employer maintains that it is not liable for any amount greater than that permitted under Section 306(f.1)(3)(i).

■ The recent case of *Furnival State Machinery/Transamerica Insurance Group v. Workers' Compensation Appeal Board (Slye),* 757 A.2d 433 (Pa.Cmwlth. 2000), *petition for allowance of appeal denied,* 565 Pa. 653, 771 A.2d 1289 (2001) controls this issue. In that case, we stated that Section 306(f.1)(3)(i) "limits what a *medical provider* may charge when it is compensated by an employer under the Act." *Id.,* 757 A.2d at 436. (Emphasis added.) The cost containment provision, upon which Employer relies, is directed to medical providers and therefore not applicable in this situation. Rather, Section 319 of the Act, 77 P.S. § 671 is applicable. That section states:

Where an employee has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or insurance company on the basis that the injury and disability were not compensable under this act in the

event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award *to the amount so paid,* if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.

(Emphasis added.) As we observed in *Furnival,* the above language "specifically provides that the payor shall be subrogated 'in the amount so paid.'" *Furnival,* 757 A.2d at 436. As such, the third party insurer in this case is entitled to receive the full amount it paid.

Employer nonetheless argues that the cost containment provisions of the Act are applicable and attempts to distinguish *Furnival.* Employer maintains that unlike *Furnival,* where the employer initially refused to pay for the claimant's surgery alleged to have been necessary for a work-related injury, Employer in this case did not have an opportunity to re-price the bills and pay them under the cost containment provisions of the Act because at the time of Decedent's treatment no claim was made for benefits. In fact, the fatal claim petition was not filed until one year after Decedent's death. This does not alter the fact, however, that the cost containment provisions are applicable to medical providers and thus does not apply to this case.

In accordance with the above, the order of the Board is affirmed.

### ORDER

Now, August 30, 2001, the order of the Workers' Compensation Appeal Board at No. A98–4508, dated December 21, 2000, is affirmed.