David GRIFFITHS, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (SEVEN STARS
FARM, INC.), Respondent

Seven Stars Farm, Inc., Petitioner

v.

Workers' Compensation Appeal Board
(Griffiths), Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2004.
Decided Nov. 10, 2004.

Matthew L. Wilson, Philadelphia, for petitioner.

Charles S. Katz, Jr., Philadelphia, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge McGINLEY.

David Griffiths (Claimant) seeks review of the Workers' Compensation Appeal Board's (Board) order that reversed the Workers' Compensation Judge's (WCJ) decision that ordered Seven Stars Farm, Inc. (Employer) to pay the purchase price of Claimant's 2000 Ford Windstar van (Van). At the same time, Employer seeks review of the order of the Board that affirmed the WCJ's decision that ordered Employer to pay 100% of the cost of retrofitting the Van to make it wheelchair accessible and the full cost of two months van rental. This Court has consolidated the two petitions for review.

On August 21, 2000, Claimant sustained a C–5 quadriplegia when he was struck by a bale of hay. Employer began paying total disability benefits. On or about January 26, 2001, Claimant petitioned for penalties and alleged that Employer violated the Workers' Compensation Act (Act)[1] relative to the processing of medical expenses regarding a van rental and subsequent Van purchase that included a retrofit to make it wheelchair accessible.

Before the WCJ, the parties stipulated that Claimant purchased the Van for $18,000, the Van was retrofitted to make it wheelchair accessible for an additional $10,000, plus shipping and handling in the amount of $500. Also submitted into evidence was a bill for $2,085.09 for a wheelchair accessible van rental from December 22, 2000, to January 20, 2001, and a bill for $1,968.00 for a wheelchair accessible van rental from January 21, 2001, to February 19, 2001. The parties further stipulated that Employer reimbursed Claimant eighty percent of the cost of the conversion of the Van and eighty percent of the van rental cost.

The parties agreed that the issues before the WCJ were whether Claimant was entitled to reimbursement for the entire purchase price of the Van; whether Claimant was entitled to reimbursement for the entire conversion cost of the Van or only eighty percent of the conversion cost; and whether Claimant was entitled to reimbursement for the full cost of the van rental or only the eighty percent reimbursement made by Employer.[2]

The WCJ granted the penalty petition and ordered Employer to pay the full cost of the Van, the retrofitting required to make it wheelchair accessible, and the rental charges. The WCJ also assessed ten percent interest on all deferred payments and awarded Claimant counsel fees

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

2. Edith Griffiths, Claimant's wife, testified regarding the van rental, the purchase of the Van, and the retrofitting.

in the amount of ten percent of all wage loss benefits plus interest, with the fee chargeable against Claimant's share of disability compensation. The WCJ made the following conclusions of law:

1. The Employer/Carrier is responsible for 'orthropedic [sic] appliances' under the Act. Section 306(f.1)(1)(ii). Modifications to the van to make it wheelchair accessible constitute an expense for 'orthopedic appliances,' . . . .

2. The cost containment provisions of the Act, specifically, Section 306(f.1)(3)(i), limits [sic] the charges of a health care provider. Here, there being no health care provider involved, Claimant is not limited as to reimbursement, and may recover the actual cost required for conversion of the van for wheelchair accessibility, and for the rental fees.

3. A reasonable cost to purchase the van is recoverable under the circumstances of this case.

[**Discussion**]: Without a van, with retrofitting for wheelchair accessibility, this paraplegic Claimant is confined to his home due to the work injury; limited, if not totally precluded, even as to obtaining medical attention, since this family had no other vehicles to enable Claimant to get to medical appointments, and transportation was not provided by the carrier.

Defendant's [Employer] obligation to pay for retrofitting is of no benefit unless the Claimant has a van. In turn, whether David Griffiths, or any other claimant in similar circumstances can obtain a van is dependent upon available resources. Here, the moneys to purchase were borrowed from a family friend.

Upon consideration of the specific special financial circumstances presented here . . ., payment of a reasonable sum for purchase of the van itself is appropriate. Here, the additional expense, namely, the sum of $18,500 is reasonable [(cost of van and shipping without retrofitting)] (Citations and footnote omitted).

WCJ's Decision, April 30, 2002, Conclusions of Law Nos. 1–3 at 1–2; Reproduced Record (R.R.) at R7–R8.

Employer appealed to the Board and asserted that it was not responsible for the purchase price of the Van and that the WCJ erred when he did not limit Claimant's recovery of van rental expenses and the conversion costs of the Van to eighty percent. The Board affirmed in part and reversed in part. With respect to whether Employer was responsible for the purchase price of the Van, the Board reversed:

After a careful review of the record, the Board has determined that the WCJ erred in concluding that Defendant [Employer] is responsible for the purchase price of the base vehicle. The van itself is not an orthopedic appliance and, therefore, the Act does not require Defendant [Employer] to pay for it. . . . We reject the WCJ's attempt to distinguish *Petrilla* [*v. Workmen's Compensation Appeal Board (People's Natural Gas)*, 692 A.2d 623 (Pa.Cmwlth.1997)] based on Claimant's specific financial circumstances. As the WCJ acknowledged, *Petrilla* did not consider the claimant's financial circumstances and we do not see how the source of the funds that Claimant used to produce the van brings it within the definition of an orthopedic appliance. In *Petrilla*, the Commonwealth Court determined that the base price of a vehicle that is retrofitted for a claimant's use is not recoverable and we are bound by that determination.

Board Opinion, July 23, 2003, (Opinion) at 4; R.R. at R22.

With respect to the van rentals and conversion costs, the Board affirmed:

> The WCJ determined that Section 306(f.1)(3)(i) does not limit the amount of reimbursement because there was no health care provider involved. . . .
>
> After a careful review of the record, the Board has determined that the WCJ did not err in concluding that limits of Section 306(f.1)(3)(i) are inapplicable in the instant matter. Section 306(f.1)(3)(i) is directed to medical providers. . . . Because the transaction did not involve a health care provider within the meaning of that Act, Defendant [Employer] is required to reimburse Claimant 100 percent of costs of renting a van for two months and of making the purchased van wheelchair accessible. (Citations omitted. Footnotes omitted).

Opinion at 5–6; R.R. at R23–R24. Both parties petitioned for review with this Court.

## I. Claimant's Petition for Review.

Claimant contends that the Board's determination that Employer is not required to pay the purchase price of the Van violated Claimant's right to equal protection of the law under the Fourteenth Amendment to the United States Constitution and under the Pennsylvania Constitution.[3]

Employer argues that Claimant waived the issue of this alleged violation because he neither raised it before the Board nor in his petition for review.

Employer is correct that Claimant failed to timely raise and preserve the issue. A constitutional issue may not be raised for the first time on appeal to this Court unless the question goes to the constitutionality of a statute. *See Pook v. Commonwealth, State Board of Auctioneer Examiners*, 735 A.2d 134 (Pa.Cmwlth. 1999). Here, Claimant does not question the constitutionality of the Act rather Claimant asserts that the Board's application of the Act resulted in a denial of his right to equal protection under the law. The issue was not preserved before the Board.[4]

However, there is a question whether *Petrilla v. Workmen's Compensation Appeal Board (People's Natural Gas)*, 692 A.2d 623 (Pa.Cmwlth.1997) is controlling or should be overruled. Section 306(f.1)(1)(i) of the Act, 77 P.S. § 531(1)(i), provides in pertinent part, "[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed."

Section 306(f.1)(1)(ii) of the Act, 77 P.S. § 531(1)(ii), provides in pertinent part, "In addition to the above services, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and *orthopedic appliances*, and prostheses in accordance with this section. . . ." (Emphasis added).

---

**3.** Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

**4.** Assuming arguendo that Claimant preserved this issue before the Board, Claimant also failed to include it in his petition for review. Pursuant to Pa.R.A.P. 1513(a), an issue not raised in a petition for review is considered waived and will not be addressed by this Court. *Teledyne McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259 (Pa.Cmwlth.1997).

In *Rieger v. Workmen's Compensation Appeal Board (Barnes & Tucker Company)*, 104 Pa.Cmwlth. 42, 521 A.2d 84 (Pa. Cmwlth.1987), this Court held that Barnes & Tucker Company, the employer of the injured worker, Richard Rieger (Rieger), was obligated to pay $433.02 for the remodeling of Rieger's home for the installation of bars and ramps to make the home wheelchair accessible and $359.34 for the installation of hand controls in Rieger's automobile. The Court determined that the alterations to Rieger's home and automobile constituted "orthopedic appliances" under Section 306(f)(4) of the Act, 77 P.S. § 531.[5]

In *Petrilla*, this Court addressed the question of whether a specially equipped van constituted an "orthopedic appliance" under the Act. Robert J. Petrilla (Petrilla), paraplegic as a result of a work-related injury, petitioned for review and alleged in part that People's Natural Gas (People's), his employer, had failed to provide a specially equipped van which had been prescribed for him because he could no longer transport himself in a standard size car with modified controls due to his medical condition. Petrilla requested $37,940 for the van. People's answered and stated it had offered to retrofit a vehicle, but denied any obligation to provide the vehicle itself. The referee[6] determined that the van did not qualify as an "orthopedic appliance" under Section 306(f.1) of the Act and denied Petrilla's petition. The Board affirmed. *Petrilla*, 692 A.2d at 624.

This Court determined that People's did not have a duty under the Act to pay for the cost of the van, only the cost to retrofit, and affirmed. This Court reasoned that the van was not an "orthopedic appliance" under the Act:

> The general use of a vehicle must, of course, be distinguished from the retrofitting of that vehicle, without which the vehicle could not be operated by the claimant. It is the modifications and additional 'appliances,' not the vehicle itself, which are necessary to accommodate the claimant's work-related injury. Thus, the special retrofitting is an 'orthopedic appliance,' ..., while a van itself is not.

> Second, by analogy, while the special remodeling of an injured worker's home to make it wheelchair accessible might be analogous to the cost of retrofitting a motor vehicle so that the vehicle is accessible to a paraplegic, the cost of the van itself might also be analogized to the cost of purchasing the home itself, which is noncompensable; to argue that these latter costs should be compensable is simply untenable.

*Petrilla*, 692 A.2d at 627.

■ The present controversy is controlled by *Petrilla*. Here, as in *Petrilla*, Claimant asserts that Employer is responsible for the purchase price of the Van, which was then retrofitted so that Claimant, a quadriplegic, could have transportation. This Court in *Petrilla* held that under the Act, a van is not an "orthopedic appliance." This Court concludes the interpretation of the Act in *Petrilla* is the proper interpretation.

■ Claimant also argues that this Court should order Employer to pay the purchase price of the Van in light of the fact that the Act is remedial in nature and is intended to benefit the worker and must

---

5. Section 306(f)(4) of the Act was renumbered Section 306(f.1)(1)(ii) by Act 44 of 1993 on July 2, 1993. This section remains essentially the same.

6. WCJs were formerly titled as referees.

be liberally construed to meet its humanitarian goals. *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524 (2003). While this Court is cognizant of the humanitarian purpose of the Act and is sensitive to the difficulties Claimant faces, this Court does not agree. Claimant receives workers' compensation benefits to compensate him for his wage loss and, under the Act, his medical expenses are paid. His inability to purchase the Van is a product of his own financial circumstances, not his work-related injury. Even given the humanitarian purposes of the Act, this Court can find no duty placed upon Employer by the General Assembly to purchase the Van.[7]

## II. Employer's Petition for Review.

■ Employer contends that the Board erred when it affirmed the WCJ's decision which required Employer to reimburse Claimant for the total cost of retrofitting the Van and for the total cost of two months van rental.

In *Petrilla,* this Court determined that the special retrofitting of a vehicle is an "orthopedic appliance" under the Act. Section 306(f.1)(1)(ii) of the Act, 77 P.S. § 531(1)(ii), provides that an employer shall provide payment for "orthopedic appliances."

In order to determine the amount of payment required for an "orthopedic appli-ance," Section 306(f.1)(3)(i) of the Act, 77 P.S. § 531(3)(i), provides in pertinent part:

> If the commissioner determines that an allowance for a particular provider group or service under the Medicare program is not reasonable, it may adopt by regulation a new allowance. If the prevailing charge, fee schedule, recommended fee, inflation index charge, DRG [diagnostic-related group] payment or any other reimbursement has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of the payment may not exceed eighty per centum of the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided.

Here, the Board determined that Employer's payment obligation was not limited to eighty percent of the cost because Section 306(f.1)(3)(i) of the Act limits providers from receiving more than the fee cap and the Board reasoned that a provider under the Act was a health care provider. Here, it is clear that no health care provider was advised or even indirectly consulted or involved either in the retrofitting of the Van or in the rental of the wheelchair accessible vans prior to the purchase of the Van. The Board agreed with the WCJ that the limits did not apply and that Employer was liable for the full cost.[8]

---

7. Claimant asserts that *Rieger* supports his position. However, *Rieger* is inapposite. The van is not an orthopedic appliance under *Petrilla.*

8. The Board relied on *Villanova University v. Workers' Compensation Appeal Board (Mantle),* 783 A.2d 366 (Pa.Cmwlth.2001), *petition for allowance of appeal denied,* 568 Pa. 730, 797 A.2d 919 (2002). In *Villanova,* Julia Mantle, the widow of Jason Cardelli (Cardel-li), filed a fatal claim petition and also sought to have Villanova University (Villanova) reimburse Independence Blue Cross for $10,765.00, the full amount that Independence Blue Cross paid to Cardelli's health care providers. The WCJ ordered Villanova to pay, and the Board affirmed. Villanova argued that its liability was capped in accord with Section 306(f.1)(3)(i) of the Act, 77 P.S. § 531(3)(i). This Court affirmed and determined that Section 306(f.1)(3)(i) did not apply

This Court must disagree with the Board's determination. Section 306(f.1)(3)(i) of the Act, 77 P.S. § 531(3)(i), provides for the eighty percent limitation for products and services that are not calculated under the Medicare program. It is undisputed that there is no Medicare calculation applicable here. For any reimbursement the wheelchair lift must be classified as a product and the van rental as a product or service under the Act. If the retrofitting of the Van and the van rental do not qualify as "treatment, accommodation, product or service" subject to the cost containment provisions of Section 306(f.1)(3)(i) of the Act, then there is no basis for any reimbursement whatsoever under the Act because there was no medical provider involved. This Court is constrained to agree that under the Act Employer's obligation is capped at eighty percent of the cost to retrofit the Van and for the van rental.

Accordingly, this Court affirms that portion of the Board's order which reversed the WCJ's determination that Employer was required to pay for the Van. This Court reverses that portion of the Board's order which affirmed the WCJ's decision which ordered Employer to pay the total

because it only limits what a medical provider may charge when it is compensated by an employer and that Section 319 of the Act, 77 P.S. § 671, applied because it addressed the situation "[w]here an employee has received payments for the disability or medical expense resulting from the injury in the course of his employment paid by the employer or insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board." *Villanova*, 783 A.2d at 369.

cost to retrofit the Van and the van rental for two months.

### ORDER

AND NOW, this 10th day of November, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed in part and reversed in part. This Court affirms that portion of the Workers' Compensation Appeal Board's order which reversed the WCJ's determination that Seven Stars Farm, Inc. was required to pay for the cost of the 2000 Ford Windstar Van. This Court reverses that portion of the Workers' Compensation Appeal Board's order which affirmed the WCJ's decision which ordered Seven Stars Farm, Inc. to pay the total cost to retrofit the van and the van rental for two months.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. Unlike the majority, I agree with David Griffiths (Claimant) that Seven Stars Farm, Inc. (Employer) is responsible for the $18,000 purchase price of Claimant's 2000 Ford Windstar Van (Van) as well as 100% of the $10,000 cost to retrofit the Van to make it wheelchair-accessible and the full cost for two months of van rental.[1]

*Villanova* is distinguishable from the present case in that *Villanova* dealt with subrogation and did not address payments for orthopedic appliances. The Board's reliance was misplaced.

1. The parties stipulated that Claimant purchased the Van for $18,000 and that the Van was retrofitted to make it wheelchair-accessible for another $10,000. In addition, Claimant paid $2,085.09 for wheelchair-accessible van rental from December 22, 2000, to January 20, 2001, and paid $1,968 for wheelchair-accessible van rental from January 21, 2001, to February 19, 2001. Employer reimbursed Claimant for 80% of the cost to retrofit the Van and 80% of the van rental cost. In this regard, I would note that Employer clearly is

Claimant received disability benefits from Employer after being struck by a bale of hay, sustaining injuries that rendered Claimant a quadriplegic. Subsequently, Claimant filed a penalty petition alleging that Employer violated the Workers' Compensation Act [2] (Act) by failing to pay for reasonable and necessary quadriplegic accessible transportation. Fortunately, while this case was being litigated, Claimant was able to borrow money from a family friend that allowed him to purchase the Van, which Claimant then had retrofitted to make it wheelchair-accessible.

Before the workers' compensation judge (WCJ), the parties stipulated that there were three issues for resolution: (1) whether Claimant is entitled to reimbursement for the purchase price of the Van; (2) whether Claimant is entitled to reimbursement for 100%, or only 80%, of the cost to retrofit the Van; and (3) whether Claimant was entitled to 100%, or only 80%, of the cost of the van rental. By decision and order dated April 30, 2002, the WCJ concluded that the modifications to make the Van wheelchair-accessible constituted an expense for "orthopedic appliances" under Section 306(f.1)(1)(ii) of the Act.[3] (WCJ's Conclusions of Law, No. 1.) In addition, the WCJ concluded that a reasonable cost to purchase the Van itself was also recoverable by Claimant. (WCJ's Conclusions of Law, No. 3.) With regard to the cost containment issue, the WCJ concluded that section 306(f.1)(3)(i) of the Act limits the charges of a health care provider, and, because no health care provider was involved, Claimant is not limited to 80% reimbursement; rather, he could recover the reasonable actual cost of converting the Van for wheelchair accessibility and could recover all rental fees. (WCJ's Conclusion of Law, No. 2). Accordingly, the WCJ granted Claimant's penalty petition and ordered Employer to pay the full cost of the Van, the retrofitting and the rental charges.

Employer appealed to the Workers' Compensation Appeal Board (Board), which affirmed in part and reversed in part. Relying on *Petrilla v. Workmen's Compensation Appeal Board (People's Natural Gas )*, 692 A.2d 623 (Pa.Cmwlth. 1997), the Board held that Employer was not liable for the purchase price of the Van. However, the Board affirmed the WCJ's decision that the costs to retrofit the Van and the van rental were not limited by the cost containment provision of the Act. Both parties petitioned this court for review.

In ruling on Claimant's petition for review, the majority affirms the Board. The majority reasons that this result is dictated by *Petrilla*, which holds that the term "orthopedic appliance," for which an employer is responsible under section 306(f.1)(1)(ii) of the Act, refers to the equipment needed to retrofit a van to make it wheelchair-accessible but does not include the cost of the van itself.

not prejudiced by the result I would reach here. Consider that Employer has agreed that is responsible for 80% of Claimant's cost to rent a van and that Claimant's van rental costs appear to average $2,000 monthly. Therefore, Employer would have to reimburse Claimant approximately $1,600 a month, or $19,200 a year. Thus, spending $18,000 on a Van that would last Claimant for many years would appear to be a prudent course for Employer to take.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

3. 77 P.S. § 531(1)(ii). That section provides in pertinent part, "In addition to the above service, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and *orthopedic appliances,* and prostheses in accordance with this section." 77 P.S. § 531(1)(ii) (emphasis added).

However, the majority reverses the Board's determination that Employer must reimburse Claimant for the total cost of retrofitting the Van and for two months of van rental. For the following reasons, I believe that Employer is responsible for the original purchase price of the Van pursuant to section 306(f.1)(1)(ii) of the Act, which requires an employer to pay for "orthopedic appliances," and that *Petrilla* should be overruled. Further, I believe that section 306(f.1)(1)(i) of the Act does not apply to limit Employer's payment obligation for the retrofitting and rental costs.

## I. *Petrilla* should be overruled

In *Petrilla,* this court held as a matter of first impression that an employer is not liable for the cost of a van that is necessary for the transportation of a paraplegic; instead, an employer only has to pay for the retrofitting of a van to make it wheelchair-accessible (assuming the claimant can afford a van). Although we could distinguish *Petrilla* by treating the quadriplegic here differently from the paraplegic in *Petrilla,* such a distinction is not tenable; neither the claimant in *Petrilla* nor Claimant here could obtain medical treatment without the medically prescribed van and thus, from a mobility standpoint, these situations are indistinguishable.

I agree with Senior Judge Mirarchi's dissent in *Petrilla,* wherein he relied on the case of *Rieger v. Workmen's Compensation Appeal Board,* 104 Pa.Cmwlth. 42, 521 A.2d 84 (1987). In *Rieger,* the paraplegic claimant was awarded benefits for a spinal cord injury that cost him the use of his legs. This court held that the employer had to pay for modifications to the claimant's home and for hand-control modifications to his vehicle to enable him to drive because, if employer were allowed to refuse to pay these bills, the remedial nature of the Act would be frustrated. After

concluding that a wheelchair was an orthopedic appliance for the paraplegic claimant, Judge Colins stated in *Rieger* that: "[I]f a wheelchair is necessary, then it logically follows that minor modifications needed to facilitate the use of the appliance must also be considered a necessity." *Id.* at 87. In his dissent in *Petrilla,* Judge Mirachi stated,

> [a]s in *Rieger,* if the [c]laimant's injuries make it impossible to leave his home, the remedial nature of the Act would be frustrated by a failure to provide a one-time expenditure. I, therefore, conclude that the van requested by [c]laimant in this matter falls within orthopedic appliances under Section 306(f).

*Petrilla,* 692 A.2d at 628 (Mirarchi, S.J., dissenting).

The *Petrilla* case created a situation whereby a claimant with enough money can purchase a van and get it retrofitted by paying 20% of the retrofit. However, another paraplegic claimant who is immobile due to a work-related accident but who does not have the money to buy a van that can accommodate a wheelchair and the equipment necessary to lift that wheelchair into the van is left immobile and trapped inside his home, unable to even obtain medical care, let alone participate in the activities he once participated in before his injury.

This disparity between the claimant in *Rieger,* who could receive benefits to allow him to become mobile beyond 200 feet, and the claimant in *Petrilla,* who was refused benefits for a retrofitted van that would have allowed him to become mobile, is untenable and contrary to the humanitarian purposes of the Act; thus, it should not be followed here where the more catastrophic situation of this quadriplegic Claimant must be considered. Further, the similarity between *Rieger* and Claim-

ant here is readily recognizable in view of the fact that, for a quadriplegic claimant totally immobilized as a result of a work-related injury, a retrofitted wheelchair-accessible van is the equivalent of a big motorized wheelchair with a steering wheel. This motorized wheelchair Van is necessary orthopedic equipment to allow Claimant to traverse the public roads to enjoy a minimum quality of life as he struggles to obtain the medical treatment necessary to keep him alive. It enables Claimant to become "mobile," although to a ridiculously limited extent in comparison to his mobility before being injured while serving Employer. In the discussion portion of his decision, the WCJ concluded that,

> [w]ithout a van, with retrofitting for wheelchair accessibility, this paraplegic [sic] Claimant is confined to his home due to the work injury; limited, if not totally precluded, even as to obtaining medical attention, since this family had no other vehicles to enable Claimant to get to medical appointments, and transportation was not provided by the Carrier.

(WCJ's decision at 4.) Thus, without a van, Claimant would not have been able to travel to his doctor's office for necessary medical treatment or to the store to purchase the necessities of life. Moreover, he would lose the little bit that is left of his quality of life by being unable to participate in the many other activities outside the home that he enjoyed before the work-related accident. The legislature certainly intended that any claimant who, like Claimant here, proves that such restrictions on his life were caused by his services to his employer is entitled to the full benefits of the Act. The mere fact that Claimant was

able to borrow the purchase price of the Van from a friend should not distinguish him from a similarly situated claimant without such a friend.

Furthermore, the majority in *Petrilla* was concerned that requiring an employer to provide a vehicle could be a burdensome expense. History, however, does not support such a concern. *Petrilla* was the first appeal in this Commonwealth of a dependent paraplegic seeking the use of a retrofitted van, and, in the seven year period since *Petrilla*, the present case apparently is the only other such case. Fortunately, isolated, catastrophic injuries are extremely rare and hardly the normal risk to be calculated as a burdensome expense. Moreover, pursuant to section 306(f.1)(1)(i), all medical services are required to be reasonable. I believe this provides sufficient protection to employers.[4]

Accordingly, I would hold that a wheelchair-accessible van is an "orthopedic appliance" under Section 306(f.1)(1)(ii) of the Act, and I would require Employer to pay Claimant for the Van itself in addition to the costs to retrofit the Van.

## II. The cost containment provisions of the Act are inapplicable

Section 306(f.1)(1)(i) of the Act provides, in relevant part, that:

> (1)(i) The employer shall provide payment in accordance with this section *for reasonable* surgical and *medical services,* services *rendered by physicians* or *other health care providers* . . . .

77 P.S. § 531(1)(i) (emphasis added). The cost containment provisions are found in Section 306(f.1)(3)(i) of the Act, which provides that:

> lenge this determination. Therefore, we would not need to remand this case to the WCJ for findings on this issue.

---

4. In this case, the WCJ already determined that the cost of the Van and the retrofitting was reasonable, and Employer does not chal-

(3)(i) For purposes of this clause, a **provider** shall not require, request or accept payment for the **treatment, accommodations, products or services** in excess of one hundred thirteen per centum of the prevailing charge at the seventy-fifth percentile; one hundred thirteen per centum of the applicable fee schedule, the recommended fee or the inflation index charge; one hundred thirteen per centum of the DRG payment plus pass-through costs and applicable cost or day outliers; or one hundred thirteen per centum of any other Medicare reimbursement mechanism, as determined by the Medicare carrier or intermediary, whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services rendered. If the commissioner determines that an allowance for a particular provider group or service under the Medicare program is not reasonable, it may adopt, by regulation, a new allowance. *If the prevailing charge, fee schedule, recommended fee, inflation index charge, DRG payment or any other reimbursement has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of the payment may not exceed eighty per centum of the charge most often made by providers* of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided.

77 P.S. § 531(3)(i) (emphases added).

The Board reasoned that the cost containment provisions of the Act do not apply in this case because the services of retrofitting the Van and renting a van were not provided by a health care provider. I would agree. When section 306(f.1)(3)(i) references providers, it is referencing *health care* providers. As such, the intent of this section is to limit the charges of medical services provided by health care providers. A wheelchair-accessible van is a "medical service" because it allows the injured and immobile claimant to become mobile. However, it is not a medical service provided by a health care provider. As such, the medical cost containment provisions of section 306(f.1)(3)(i) would not apply to the expense for this "orthopedic appliance," the cost of which is provided for in section 306(f.1)(1)(ii).

Therefore, I would affirm that portion of the Board's order which affirmed the WCJ's decision ordering Employer to pay the total cost to retrofit the Van and the van rental for two months. In addition, I would reverse that portion of the Board's order which reversed the WCJ's decision requiring Employer to pay for the cost of the Van itself. Like the WCJ, I would hold that Employer must pay the entire cost of the retrofitted, wheelchair-accessible Van and the van rental charges without any reduction under the cost containment provisions of the Act.

Judge PELLEGRINI joins in this dissent.