1997 ME 191

**Gloria BRAWN**

v.

**GLORIA'S COUNTRY INN**

and

**American Fidelity/MGA Insurance Co.**

Supreme Judicial Court of Maine.

Argued May 6, 1997.

Decided Aug. 13, 1997.

Robert J. Stolt (orally), Lipman & Katz, P.A., Augusta, for employee.

Paul H. Sighinolfi (orally), Jane E. Skelton, Rudman & Winchell, Bangor, for employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Gloria Brawn appeals from a decision of the Workers' Compensation Board denying, in part, her petitions for payment of medical expenses. The Board ordered her employer, Gloria's Country Inn, to pay the cost of adapting a van to accommodate Brawn's quadriplegia, but concluded that the Inn could not be required to purchase the van. 39–A M.R.S.A. § 206 (Supp.1996).[1] The Board also denied Brawn's petition seeking payment for the services of a part-time personal care assistant who performed housekeeping services in the course of her duties. Because we conclude that, in the circumstances of this case, Brawn is entitled to the full cost of a specially adapted van and reimbursement for the services of the part-time personal care assistant pursuant to section 206, we vacate the decision of the Board.

I.

[¶ 2] Brawn suffered a compensable injury on October 4, 1987 that rendered her quadriplegic. In addition to quadriplegia, Brawn suffers from low blood pressure that causes dizziness and fainting. She uses a specially adapted wheelchair that weighs 300 lbs. and is not readily transportable in ordinary vehicles.[2] Gloria's Country Inn voluntarily purchased a van in 1989 that was specially adapted to accommodate Brawn's wheelchair and her disability. In 1994 Brawn filed a petition with the Board seeking payment of the cost of a replacement van. The employer has agreed to pay the cost of adapting a van ($18,808), but disputes that it is required to pay for the cost of the van itself ($22,600).

[¶ 3] Since her injury, Brawn employs two personal care assistants in addition to her husband who also performs the services of a personal care assistant. A part-time assistant works from 8:00 a.m. until noon; the other works from 8:00 a.m. until 2:30 p.m. After the personal care assistants leave in the afternoon, Brawn's husband performs the services of a personal care assistant until morning. The assistants perform a variety of tasks for Brawn, including bathing her, washing her hair, monitoring her blood pressure, taking urine samples, purchasing and administering medications, typing correspondence, taking her shopping and to do other outside errands, wrapping Christmas and birthday gifts, and responding to emergencies, such as frequent fainting or other accidents. All of the personal care assistants perform some housekeeping services, such as the preparation of meals, washing floors and dishes, vacuuming, dusting, and keeping her wheelchair and van clean.

[¶ 4] The Inn does not dispute that Brawn requires 24–hour care and has voluntarily paid for the services of the personal care assistants, including hourly payment to Brawn's husband in his capacity as a personal care assistant. After our decision in *Cote v. Georgia–Pacific Corp.*, 596 A.2d 1004–05 (Me.1991), however, the Inn filed a Notice of Controversy with the Board denying liability for the services of the part-time assistant, contending that those services were purely housekeeping and not covered by the Act. In 1994 Brawn filed a petition with the Board requesting reimbursement for the part-time personal care assistant at a rate of $9.00 an hour.

[¶ 5] The Board granted, in part, Brawn's petition seeking the replacement of her specially adapted van, concluding that the modifications to the van were medically necessary to accommodate the employee's wheelchair. The Board also concluded, however, that the van itself is not a physical aid for purposes of

---

1. The parties concede that, although Brawn's injury preceded the effective date of title 39–A, this appeal is governed by 39–A M.R.S.A. § 206 and not former 39 M.R.S.A. § 52 (Supp.1992), repealed and replaced by P.L.1991, ch. 885, §§ A–7, A–8. *Maine Workers' Compensation Act of 1992*, P.L. 1991, ch. 885, § A–10(1) (effective January 1, 1993); *Morgan–Leland v. University of Maine*, 632 A.2d 748, 748–49 (Me.1993). Sec-

tion 206 and former section 52 contain virtually identical language with respect to this issue and therefore it makes little practical difference which statute is applied in this case.

2. Prior to the purchase of the van, Brawn used the family pickup truck, modified with a wheelchair ramp, for transportation.

section 206 and therefore the Inn is not required to purchase the van. The Board found that Brawn must have at least one personal care assistant on duty 24 hours a day and two assistants during part of the day. The Board denied Brawn's petition related to housekeeping expenses, stating that

> [t]he evidence indicates that Ms. Brawn has need for two personal care assistants and, with a person as severely injured as herself, it is artificial to say that certain of the tasks [the personal assistants] perform are purely medical and others are purely housekeeping. Nevertheless, based upon my reading of *Cote*, [596 A.2d at 1004–05,] the Petition to Fix seeking payment for housekeeping expenses is denied.

The Board denied Brawn's motion for findings of fact and conclusions of law and we granted her petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1996).

## II.

[¶ 6] The first paragraph of section 206 provides that "[a]n employee sustaining a personal injury arising out of and in the course of employment or disabled by occupational disease is entitled to reasonable and proper medical, surgical and hospital services, nursing, medicines, and mechanical, surgical aids, as needed, paid for by the employer." 39–A M.R.S.A. § 206. Subsection 8, dealing with "[p]hysical aids," provides, in pertinent part, that "[t]he employer shall furnish artificial limbs, eyes, teeth, eyeglasses, hearing aids, orthopedic devices and other physical aids made necessary by the injury and shall replace or renew them when necessary from wear and tear or physical change of the employee." 39–A M.R.S.A. § 206(8).

[¶ 7] Brawn contends that a specially adapted van is a "reasonable and proper ... mechanical ... aid[ ]" for purposes of section 206 and a "physical aid[ ] made necessary by the injury" for purposes of subsection 8 that the employer must "replace or renew ... when necessary from wear and tear." Brawn contends that her injury prevents her from using public transportation, and that her only other transportation would be by "ambulance, which can get her to medical

appointments and medical emergencies." She contends that without a van she would be confined to her home with no access to the outside world, and that the van is reasonably necessary to provide basic mobility and to facilitate the use of her wheelchair.

[¶ 8] We have not addressed the issue whether an employer may be required to provide a medically adapted van for an injured employee. The former Appellate Division of the Workers' Compensation Commission and the Board have considered the issue on two occasions: *Tufts v. R.A. Cummings, Inc.*, Me. W.C.B. App. Div. 445, 448–49 (Me. 1993); *LaCourse v. Co–Hen Egg Co.*, Me. W.C.C. App. Div. 853, 854–55 (Me.1992). In both cases, the Division concluded that the cost of a van is not a medical expense for purposes of the Act, but that the cost of retrofitting the van is compensable if it is necessary to permit the use of a "mechanical aid" or "orthopedic device," such as a wheelchair. Other jurisdictions are divided on the issue of specially adapted vans. *See generally*, 2 A. Larson, *The Law of Workmen's Compensation*, § 61–13(a) (1993). The cases can be divided into three categories: (1) those that deny reimbursement not only for vans, but also for modifications to cars or vans, *R & T Constr. Co. v. Judge*, 323 Md. 514, 594 A.2d 99, 108 (Md.1991); *McDonald v. Brunswick Elec. Membership Corp.*, 77 N.C.App. 753, 336 S.E.2d 407, 409 (N.C. 1985); (2) those that hold that modifications are reimbursable but have not required employers to pay the full cost of the van, *Meyer v. North Dakota Workers Compensation Bureau*, 512 N.W.2d 680, 684 (N.D.1994); *Crouch v. West Virginia Workers' Compensation Comm'r*, 184 W.Va. 730, 403 S.E.2d 747, 750–51 (W.Va.1991); and (3) those that have required the employer to pay the cost of both the van and the modifications, *Terry Grantham Co. v. Industrial Comm'n*, 154 Ariz. 180, 741 P.2d 313, 316–17 (1987); *Manpower Temporary Servs. v. Sioson*, 529 N.W.2d 259, 263–64 (Iowa 1995). The differing results turn primarily on differing statutory language.

[¶ 9] Unlike the statutes in some jurisdictions, section 206 is not limited to *medical* apparatus or aids, but extends to all "reason-

able and proper ... *mechanical* ... aids" and *"physical* aids made necessary by the injury." 39–A M.R.S.A. § 206 (emphasis added). We conclude that the terms "mechanical" and "physical" "aids" in section 206 are broad enough to include a van. See *Terry Grantham Co.,* 741 P.2d at 316–17 (van is "other apparatus"); *Crouch,* 403 S.E.2d at 750–51 (W.Va.1991) (van is a "mechanical appliance"). The more difficult question is whether the van is a "reasonable and proper" mechanical or physical aid.[3]

[¶ 10] Given the facts of this case, we conclude that a van is a reasonable and proper mechanical or physical aid. As the Board concluded, the van is reasonably necessary to facilitate the use of Brawn's wheelchair. The practical benefit of a 300–pound wheelchair is greatly diminished if Brawn is effectively precluded from traveling beyond the boundaries of her own home. Moreover, in Brawn's case, the van, like the wheelchair, is reasonably necessary to provide basic mobility. The days have long passed when transportation by car or similar vehicle could be considered a "luxury." This is especially true for severely handicapped individuals, like Brawn, who are greatly restricted in their choice of alternative transportation.

[¶ 11] We do not suggest, however, that section 206 will always require the employer to purchase a van for an employee with Brawn's level of disability. In some cases, the employee may have access to other methods of transportation, or the employer may offer a reasonable alternative to the purchase of a van. Each case must be decided according to its own particular facts and according to the statute's ultimate purpose to provide reasonable relief from the effects of a work-related injury. There is nothing in the record before us to suggest that Brawn has access to any reasonable method of transportation other than a specially modified van.

Indeed, without a van, she is virtually confined to her home.

[¶ 12] Although some jurisdictions have permitted employers to deduct the cost of a medium-priced automobile from the purchase price of specially adapted vans, *Meyer,* 512 N.W.2d at 684; *Crouch,* 403 S.E.2d at 751, we conclude that, based on the facts of this case, the employer is responsible for the entire cost of the replacement van. We find nothing in the record to support the Board's finding that "Brawn would have need of a vehicle whether or not she had been injured." Due to the severity of her disability, Brawn requires the exclusive use of a specially adapted vehicle in case of emergencies for transportation to the hospital. Indeed, because the van must be available to Brawn at all times, Brawn's husband does not use the van for family or personal purposes. Even if the Brawn household owned a family vehicle prior to the injury, the uncontradicted evidence reflects that, as a result of her work-related injury, the Brawn family now requires two vehicles—a family vehicle for Brawn's husband, and a retrofitted van for Brawn. We therefore conclude that Brawn is entitled to payment from the employer for the reasonable cost of a replacement van.[4] 39–A M.R.S.A. § 206.

### III.

[¶ 13] Brawn next contends that the Board erred by denying reimbursement for the services of her part-time personal care assistant who performed some housekeeping services. The Inn contends that recovery of housekeeping expenses is precluded by our holding in *Cote,* 596 A.2d at 1004–06. The Inn's reliance on *Cote* is misplaced. In *Cote,* the employee was totally incapacitated for eighteen months and was instructed by his physician to restrict his activities during that time. *Id.* at 1004. He paid his sister $85 a week to prepare meals, clean house and do

---

3. Although the phrase "reasonable and proper" appears in the beginning sentence of section 206, and not in subsection 206(8), it is implicit that both mechanical and physical aids must be "reasonable and proper" to be compensable under the Act.

4. The Board held that, although the Inn purchased Brawn's first specially adapted van, Brawn was entitled to apply the trade-in value of her first van toward the purchase of the replacement van. Because we conclude that the Inn must purchase the replacement van, the Inn should receive the trade-in value of Brawn's first van.

laundry for himself and two teenage sons. *Id.* The Commission granted the employee's petition seeking reimbursement for his sister's services, and we vacated the Commission decision, concluding that the housekeeping services did not fall within the definition of "reasonable and proper medical, surgical and hospital services, nursing, medicines, and mechanical, surgical aids." 39 M.R.S.A. § 52 (1989), *repealed and replaced by* P.L. 1991, ch. 885, §§ A–7,A–8.

[¶ 14] The facts of this case are distinguishable from *Cote.* Unlike Brawn's part-time assistant, the housekeeper in *Cote* performed no medical function. 596 A.2d at 1004. The Board expressly found in this case that Brawn requires two personal care assistants during certain periods of the day as a matter of medical necessity. The fact that the part-time assistant also performs some housekeeping services during times when direct medical care is not immediately required does not render her presence unnecessary from a medical perspective. Section 206 must be applied in light of the practical realities of home-service care. For example, if a personal care assistant is medically required to perform a task at 8:00 a.m., 9:00 a.m., and noon, it may not be reasonable to compensate the personal assistant solely for the time spent performing those medically required tasks. Section 206 does not require an apportionment every time a personal assistant performs a housekeeping task, and a personal care attendant should not be disqualified from reimbursement for purposes of section 206 for performing some household services during a time that they must otherwise be present.

[¶ 15] In this case, the part-time personal care assistant performed some tasks that may be described as housekeeping, and other services that, in light of Brawn's condition, may be described as medical. As the Board stated in this case, "with a person as severely injured as [Brawn], it is artificial to say that certain of the tasks [the personal assistants] perform are purely medical and others are purely housekeeping." It is not necessary in this case to determine which tasks were purely housekeeping and which tasks were purely medical. We conclude that a personal care assistant who, by reason of medical necessity, must be in attendance at certain times of the day should be compensated for the reasonable time of service, even if incidental household services are performed. *Bello v. Zavota Bros. Transp. Co.*, 504 A.2d 1015, 1018–19 (R.I.1986); *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910, 915–17 (Neb.1990). Accordingly, we vacate the decision of the Board denying the employee's petition related to the payment of housekeeping services.

The entry is:

The decision of the Workers' Compensation Board vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

