943 A.2d 242

**DAVID GRIFFITHS, Appellant,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (SEVEN STARS FARM, INC.), Appellees.**

Supreme Court of Pennsylvania.

Argued May 10, 2006.

Resubmitted Jan. 11, 2008.

Decided March 19, 2008.

318

Matthew Lane Wilson, Esq., Mary T. Stark, Esq., Martin, Banks, Pond, Lehocky & Wilson, Coplay, for David Griffiths.

Timothy Dean McNair, Esq., Erie, for amicus curiae Pennsylvania Trial Lawyers Association.

Amber Marie Kenger, Esq., Richard C. Lengler, Esq., Workers Compensation Appeal Board, Harrisburg, for Workers' Compensation Appeal Board.

Sheri B. Friedman, Esq., Charles S. Katz, Jr., Esq., Swartz Campbell, L.L.C., Philadelphia, for Seven Stars Farm.

Michael D. Sherman, Esq., Fried, Kane, Walters, Zuschlag & Grochmal, Pittsburgh, for amicus curiae Pennsylvania Defense Institute.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and MCCAFFERY, JJ.

## OPINION

Chief Justice CASTILLE.

This Court granted review to determine: (1) whether a van modified to make it wheelchair accessible for a workers' compensation claimant rendered a quadriplegic by a work-related injury is an "orthopedic appliance" under Section 306(f.1)(1)(ii) of the Workers' Compensation Act ("the Act"), 77 P.S. § 531(1)(ii); and (2) whether the cost containment provision in Section 306(f.1)(3)(i) of the Act, 77 P.S. § 531(3)(i), is applicable in this instance. We hold that the van, and not merely the wheelchair lift and modifications installed in the van, may qualify as an indispensable device necessary to accommodate this sort of catastrophic work injury, and thus, may fall within the definition of an orthopedic appliance. We also hold, however, that the extent of an employer's obligation in this regard will depend upon the specific facts of the case. We further hold that the cost containment provision of the Act does not apply in the instant case. Accordingly, we reverse and remand to the Workers' Compensation Judge for proceedings consistent with this Opinion.

On August 21, 2000, appellant David Griffiths sustained a devastating injury in the course and scope of his employment with Seven Stars Farm, Inc. (Employer) when he was struck by a bale of hay that fell from overhead, rendering him a C–5

quadriplegic and confined to a wheelchair. Following a four-month hospital stay, appellant was discharged. Appellant's wife, Edith Griffiths, testified that she needed to transport appellant not only home from the hospital, but to and from follow-up medical appointments. Mrs. Griffiths rented two different vans for one month each, thus providing an opportunity to compare model layouts, features, and comfort before buying an appropriate model and design. Employer's insurance carrier representative was advised of the van rental in advance, being told that it was necessary to transport appellant home, to take him to medical appointments, and "to get out a 'little bit' and enjoy 'a little quality of life after being in the hospital [for] four months.'" WCJ Decision at 1.

Mrs. Griffiths noted that she and appellant ultimately purchased a third model van, a 2000 Ford Windstar. Appellant was more comfortable in the Windstar than in the rental vans: the Windstar had no mechanical lifts and its design was very simple, as entry is made by opening the back door, folding out a ramp by hand, and driving the wheelchair straight in. The cost of the van was $28,500, consisting of $18,000 in base costs, $10,000 in conversion costs, and $500 for shipping and handling. Other models the Griffiths had considered would have cost $40,000 or more, and were more complicated. The van was purchased with funds from a family friend. *Id.*

Employer voluntarily accepted liability for appellant's work injury and commenced timely payment of total disability compensation. The parties stipulated that Employer reimbursed appellant for eighty percent of the van rental cost and the cost of the van conversion, but refused to pay anything for the base costs for the van itself.

On January 26, 2001, appellant filed a penalty petition alleging that Employer violated the Act by failing to pay for the entirety of the van rental and the subsequent van purchase.[1] The parties stipulated that the issues before the Workers' Compensation Judge ("WCJ") were whether appellant was entitled to reimbursement for the base purchase

1. Appellant also alleged that Employer had failed to make payment for home modifications. The parties have since resolved this issue.

price of the van and whether appellant was entitled to reimbursement for one hundred percent or only eighty percent of the relevant costs.

The WCJ granted the penalty petition. The WCJ first noted the undisputed point that modifications to the van to make it wheelchair accessible were an expense for "orthopedic appliances" under Section 306(f.1)(1)(ii) of the Act, which provides, in pertinent part, that the "employer shall provide payment for medicines and supplies, hospital treatment, services and supplies, and orthopedic appliances, and prostheses in accordance with this section." 77 P.S. § 531(1)(ii). The WCJ next concluded that the cost containment provision in Section 306(f.1)(3)(i) applies only to a health care provider. Because the relevant provider in this case was the employer and its insurer, and no health care provider was involved, the WCJ found that Employer was responsible to pay the full rental costs of the prior vans and the full cost of modifying the Windstar. Finally, the WCJ concluded that "a reasonable cost to purchase the van [was] recoverable under the circumstances of this case." The WCJ explained his reasoning on this point as follows:

Without a van, with retrofitting for wheelchair accessibility, this paraplegic Claimant is confined to his home due to the work injury; limited, if not totally precluded, even as to obtaining medical attention, since this family had no other vehicles to enable Claimant to get to medical appointments, and transportation was not provided by the Carrier.

[Employer's] obligation to pay for retrofitting is of no benefit unless the Claimant has a van. In turn, whether [Claimant] or any other claimant in similar circumstances, can obtain a van is dependent upon available financial resources. Here, the moneys to purchase the van were borrowed from a family friend.

Upon consideration of the specific financial circumstances presented here *, payment of a reasonable sum for purchase of a van is appropriate. . . .

* In denying a recovery for the cost of the van, the claimant's specific financial circumstance was not discussed in *Petrilla v. WCAB (People's Natural Gas,* 692 A.2d 623 (Pa.Cmwlth.1997)).

WCJ Decision at 2–3 (Conclusions of Law).

Employer appealed to the Board, renewing its twin positions that it was responsible for making the van accessible by wheelchair, but not for its original purchase price, and that, in any event, its liability was capped at eighty percent of the cost. The Board affirmed in part (concerning cost containment) and reversed in part (concerning liability for the purchase price of the van). Citing the *Petrilla* case, the Board held that the van itself is not an orthopedic appliance under the Act, and therefore, Employer is not obliged to pay for it. The Board rejected the WCJ's distinction of *Petrilla,* which was based upon appellant's specific financial circumstances, noting that *Petrilla* did not consider the claimant's financial circumstances, "and we do not see how the source of the funds that Claimant used to purchase the van brings it within the definition of an orthopedic appliance." The Board summarily concluded, on this point, that the *Petrilla* Court "determined that the base price of a vehicle that is retrofitted for a claimant's use is not recoverable and we are bound by that determination." Board Op. at 3–4.

With respect to the cost containment provision, the Board acknowledged that where no governing fee schedule has been established, Section 306(f.1)(3)(i) caps a provider's obligation at no more than eighty percent of the charge most often made by providers in a given geographic area. The Board determined, however, that the term "provider" meant a "health care provider," and because no health care provider was involved here, the cost containment provision simply did not apply. The Board therefore agreed with the WCJ that Employer was required to reimburse appellant for one hundred percent of the costs of renting a van for two months and modifying the purchased van to make it wheelchair accessible. *Id.* at 5–6.

The parties cross-appealed the two issues. In a 5–2, *en banc* published opinion, the Commonwealth Court reversed in

part and affirmed in part, ruling in favor of Employer on both issues. *Griffiths v. Workers' Comp. Appeal Bd. (Seven Stars Farm, Inc.)*, 861 A.2d 424 (Pa.Cmwlth.2004). The majority deemed *Petrilla* to be controlling on the question of whether Employer was responsible for the cost of the van. In *Petrilla*, the claimant was rendered paraplegic and confined to a wheelchair due to a work injury. Although the employer had offered to retrofit the claimant's vehicle with hand controls and other modifications, the employer maintained that it was not obligated to provide the vehicle itself. The *Petrilla* court agreed, finding that a vehicle is not an orthopedic appliance under the statute:

> The general use of a vehicle must, of course, be distinguished from the retrofitting of that vehicle, without which the vehicle could not be operated by the claimant. It is the modifications and additional "appliances," not the vehicle itself, which are necessary to accommodate the claimant's work-related injury. Thus, the special retrofitting is an "orthopedic appliance" [citing *Rieger v. Workmen's Comp. Appeal Bd. (Barnes & Tucker Co.)*, 104 Pa.Cmwlth. 42, 521 A.2d 84 (1987)], while a van itself is not.
>
> Second, by analogy, while the special remodeling of an injured worker's home to make it wheelchair accessible might be analogous to the cost of retrofitting a motor vehicle so that the vehicle is accessible to a paraplegic, the cost of the van itself might also be analogized to the cost of purchasing the home itself, which is noncompensable; to argue that these latter costs should be compensable is simply untenable.

*Petrilla*, 692 A.2d at 627. The majority below then concluded that the interpretation of the Act in *Petrilla* was proper, and therefore, *Petrilla* controlled. Finally, the majority rejected appellant's argument premised upon the remedial nature and humanitarian purpose of the Act, opining that appellant's inability to purchase the van was "a product of his own financial circumstances, not his work-related injury." *Griffiths*, 861 A.2d at 429. Thus, the majority held that the Act did not require Employer to pay for the van.

The majority then turned to Employer's cost containment claim. The majority noted that the Board had concluded that the eighty percent cap provided in Section 306(f.1)(3)(i) of the Act, 77 P.S. § 531(3)(i), did not apply because the provision spoke only to health care providers, and Employer was not acting in that capacity. The majority disagreed, explaining as follows:

Section 306(f.1)(3)(i) ... provides for the eighty percent limitation for products and services that are not calculated under the Medicare program. It is undisputed that there is no Medicare calculation applicable here. For any reimbursement the wheelchair lift must be classified as a product and the van rental as a product or service under the Act. If the retrofitting of the Van and the van rental do not qualify as "treatment, accommodation, product or service" subject to the cost containment provisions of Section 306(f.1)(3)(i) of the Act, then there is no basis for any reimbursement whatsoever under the Act because there was no medical provider involved. This Court is constrained to agree that under the Act Employer's obligation is capped at eighty percent of the cost to retrofit the Van and for the van rental.

*Griffiths*, 861 A.2d at 430.

Judge Friedman, joined by Judge Pellegrini, dissented on both issues. With respect to the question of whether the van was an orthopedic appliance, the dissent would have overruled *Petrilla* and followed Judge Mirarchi's dissenting opinion in that case, which in turn had relied upon the panel decision by Judge (later President Judge) James Gardner Colins in *Rieger v. Workmen's Comp. Appeal Bd. (Barnes & Tucker Co.)*, 104 Pa.Cmwlth. 42, 521 A.2d 84 (1987). The dissent explained the governing principles it would extrapolate from those sources as follows:

In *Rieger*, the paraplegic claimant was awarded benefits for a spinal cord injury that cost him the use of his legs. This court held that the employer had to pay for modifications to the claimant's home and for hand-control modifications to his vehicle to enable him to drive because, if employer were

allowed to refuse to pay these bills, the remedial nature of the Act would be frustrated. After concluding that a wheelchair was an orthopedic appliance for the paraplegic claimant, Judge Colins stated in *Rieger* that: "[I]f a wheelchair is necessary, then it logically follows that minor modifications needed to facilitate the use of the appliance must also be considered a necessity." *Id.* at 87. In his dissent in *Petrilla,* Judge Mirachi [sic] stated,

> [a]s in *Rieger,* if the [c]laimant's injuries make it impossible to leave his home, the remedial nature of the Act would be frustrated by a failure to provide a onetime expenditure. I, therefore, conclude that the van requested by [c]laimant in this matter falls within orthopedic appliances under Section 306(f).

*Petrilla,* 692 A.2d at 628 (Mirarchi, S.J., dissenting).

*Griffiths,* 861 A.2d at 432 (Friedman, J., dissenting).

The dissent further noted that the *Petrilla* case created two classes of paraplegic claimants: those with enough money to purchase a van, who could avail themselves of their employers' obligation to retrofit; and those who could not afford a van, who would be left immobile, "trapped inside [their] home[s], unable to even obtain medical care, let alone participate in the activities [they] once participated in before [their] injur[ies]." *Id.* The dissent viewed this disparity as "untenable and contrary to the humanitarian purposes of the Act" particularly where, as here, the claimant was rendered quadriplegic by his work injury. *Id.* The dissent went further, viewing the van in this case as similar to the wheelchair at issue in *Rieger:*

> [T]he similarity between *Rieger* and Claimant here is readily recognizable in view of the fact that, for a quadriplegic claimant totally immobilized as a result of a work-related injury, a retrofitted wheelchair-accessible van is the equivalent of a big motorized wheelchair with a steering wheel. This motorized wheelchair Van is necessary orthopedic equipment to allow Claimant to traverse the public roads to enjoy a minimum quality of life as he struggles to obtain the medical treatment necessary to keep him alive. It enables Claimant to become "mobile," although to a ridiculously

limited extent in comparison to his mobility before being injured while serving Employer.... Thus, without a van, Claimant would not have been able to travel to his doctor's office for necessary medical treatment or to the store to purchase the necessities of life. Moreover, he would lose the little bit that is left of his quality of life by being unable to participate in the many other activities outside the home that he enjoyed before the work-related accident. The legislature certainly intended that any claimant who, like Claimant here, proves that such restrictions on his life were caused by his services to his employer is entitled to the full benefits of the Act. The mere fact that Claimant was able to borrow the purchase price of the Van from a friend should not distinguish him from a similarly situated claimant without such a friend.

*Id.* at 432–33 (quotation from WCJ omitted).

With respect to the cost containment provision, the dissent was in essential agreement ·with the Board that Section 306(f.1)(3)(i) is limited to health care providers. Although a wheelchair accessible van is a medical service because it allows an injured and immobile claimant to become mobile, the dissent argued, it is not a medical service provided by a health care provider, and therefore, the cost containment provision is inapplicable.

This Court granted appellant's request for further review of the same two issues that were litigated below. In workers' compensation appeals, the appellate court will affirm the administrative adjudication below unless it finds that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704; *Snizaski v. Workers' Comp. Appeal Bd. (ROX Coal Co.),* 586 Pa. 146, 891 A.2d 1267, 1272 (2006). In the case *sub judice,* the facts are undisputed and neither party has alleged a constitutional violation or that an agency practice or procedure was not followed. The issues are purely legal, involving statutory interpretation, and thus, this Court's review is plena-

ry. *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001); *Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.),* 566 Pa. 420, 781 A.2d 1146, 1150 (2001); *Universal Am–Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer),* 563 Pa. 480, 762 A.2d 328, 331, n. 2 (2000).

## I. Whether the Van is an Orthopedic Appliance

■ The parties maintain the positions they have taken throughout the litigation. Appellant argues that the cost of the van itself, no less than the cost of conversion, is encompassed by the Act's reference to "orthopedic appliances" and that the contrary conclusion reached by the *en banc* majority below, and the panel majority in *Petrilla,* should be disapproved. Appellant also contends that a contrary construction is unduly restrictive, resulting in a gross inequity that frustrates the humanitarian and remedial purpose underlying the Act.

Appellant emphasizes that, in his case at least, the van is an indispensable part of the wheelchair lift that is necessary to accommodate the severely limited mobility brought about by his work-related quadriplegia. If he is to be mobile, appellant stresses, he has no choice but to secure a van, since a standard-sized automobile cannot accommodate his wheelchair and lift. Absent the van, the wheelchair lift (a conceded orthopedic device here) is useless to him. Appellant asserts that the Commonwealth Court's interpretation of the term orthopedic appliance leads to an arbitrary result, as only those quadriplegic claimants wealthy enough to afford a van on their own will be able to avail themselves of the Act's provision for reimbursement for the cost of a wheelchair lift and the cost of converting a van to make it wheelchair accessible.

Appellant does not dispute that, viewed in isolation, a van ordinarily would not satisfy the common definition of an orthopedic appliance. However, appellant submits that, when a van becomes necessary as a result of a work injury which renders a person quadriplegic, it is indeed an orthopedic appliance. Like the dissent below, appellant relies upon the *Rieger* case, where the Commonwealth Court concluded that

the cost of hand controls installed in a disabled claimant's automobile to enable him to drive, and the cost of remodeling his home to accommodate his wheelchair, were compensable as payment for orthopedic appliances. Although the cost of the vehicle itself was not an issue in *Rieger*, appellant invokes the broad assertion in Judge Colins' opinion that, "a device specifically designed for the particular use of allowing the handicapped to travel as necessary without aid," qualifies the van as an orthopedic appliance. *Rieger*, 521 A.2d at 86. Appellant maintains that the van, which he did not need until he was rendered quadriplegic and confined to a wheelchair, is necessary for him to travel and, as such, it is an orthopedic appliance under the Act.

Appellant also disputes the relevance of the *en banc* majority's claim that his inability to afford the van is a product of his financial circumstances, and not his work injury. Appellant notes that his need for the van is a direct result of the work injury, and his financial circumstances are not at issue in determining whether the van, in a circumstance such as this, is an orthopedic appliance.

Finally, appellant posits that the decision below restricts his rightful access to medical benefits by denying him necessary transportation. Citing *Bonitz Brothers, Inc. v. Workmen's Compensation Appeal Board (Wymes)*, 81 Pa.Cmwlth. 594, 474 A.2d 393, 394–95 (1984) and *Roadway Express v. Workmen's Compensation Appeal Board (Ostir)*, 104 Pa.Cmwlth. 7, 520 A.2d 1261 (1987), appellant contends that Section 306(f.1)(1)(i) also contemplates reimbursement for travel for medical care "as and when needed," because that travel falls within the definition of "medical services."

Employer counters appellant's suggestion that *Petrilla* should be disapproved by suggesting that appellant seeks to expand the definition of "orthopedic appliances" merely because of the "humanitarian and remedial nature" of the Act. Employer notes that it is already liable for lost wages, medical expenses, and the cost of retrofitting a van. In Employer's view, appellant's argument for the purchase price of the van is better addressed to the General Assembly, which can amend

the Act to add such a provision explicitly, rather than to this Court, which is responsible for interpreting the statute as presently written. Employer also contends that appellant's reliance on *Rieger* is misplaced because that decision merely held that remodeling a claimant's home and installing hand controls on his vehicle were compensable as "orthopedic appliances." Employer argues that, under appellant's reading of the decision, the employer in *Petrilla* would have been obliged to buy the claimant the house which was to be remodeled.

Employer also disputes appellant's reliance upon the *Bonitz* and *Roadway Express* cases for the proposition that transportation for medical treatment is compensable as a "medical service" under Section 306(f.1)(1)(i) of the Act. Employer contends that these cases merely held that long distance travel to obtain medical treatment that was not available locally was compensable as a medical service; but, nothing in the cases held employers responsible for buying a claimant a car, bus, train or other means of transportation to travel for medical treatment, which is what appellant now seeks. Employer further argues that local travel is simply not compensable under the Act. *See Helen Mining Co. v. Workmen's Comp. Appeal Bd. (Tantlinger),* 151 Pa.Cmwlth. 242, 616 A.2d 759 (1992).[2]

Although this issue is one of first impression for this Court, it has been considered by courts in several other jurisdictions construing similar statutes. A review of the approaches by our sister states is a helpful introduction to our consideration here.

In *Manpower Temporary Services v. Sioson,* 529 N.W.2d 259 (Iowa 1995), the Supreme Court of Iowa considered a workers' compensation statute which obliged the employer/in-

---

**2.** This Court has the benefit of briefing from *amici curiae* on both sides of the dispute, the Pennsylvania Trial Lawyers Association ("PaTLA") in support of appellant, and the Pennsylvania Defense Institute ("PDI"), in support of Employer. The *amicus* briefs largely echo the parties' arguments. PaTLA also suggests some alternatives to holding Employer liable for purchasing a van: *i.e.,* Employer could pay for a van service whenever appellant required transportation, or Employer could buy the van and provide it to appellant as needed.

surance carrier to provide work-injured claimants with "reasonably necessary" medical services and supplies, transportation expenses related to those services, and "reasonable and necessary ... artificial members and appliances." IOWA CODE § 85.27. The *Manpower* court held that a specially-equipped van qualified as an "appliance." In so holding, the court noted that the claimant was confined to an electric wheelchair weighing in excess of 300 pounds, which could not practically be transported by ordinary automobile. The court further noted that "[t]he point is that a van is necessary in order to make [the claimant's] wheelchair fully useful" and that "[w]ithout a van [the claimant] is, more than need be, a prisoner of her severe paralysis." *Manpower,* 529 N.W.2d at 264. The court also emphasized the fact that the claimant had never owned an automobile, preferring to travel by foot, bicycle, or public transportation, before her work-related accident. *Id.* at 262.

In *Terry Grantham Co. v. Industrial Commission of Arizona,* 154 Ariz. 180, 741 P.2d 313 (Ariz.Ct.App.1987), the Court of Appeals of Arizona considered a workers' compensation statute that obliged the employer/insurance carrier to provide work-injured claimants with "medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members." ARIZ.REV.STAT. ANN. § 23–1062(A). The court affirmed an award requiring the employer to pay for the quadriplegic claimant's van in addition to modifications to the van. The *Grantham* court suggested that the question was fact-intensive, however, agreeing with the employer that, in some instances, only the modification to the vehicle would qualify as an apparatus. On the facts in *Grantham,* however, the court reasoned as follows:

> [A] wheelchair is simply inappropriate for travel beyond limited distances. There was no evidence that the vehicle [the claimant] owned at the time of the accident could be satisfactorily modified to replace his lost bodily functions. There was evidence that the modified van was essential to restore virtually any mobility. The administrative law

judge was correct in his conclusion that the van is a reasonably required "other apparatus."

*Grantham,* 741 P.2d at 316. In so holding, the court adopted the reasoning of the Florida District Court of Appeal to the effect that, "[w]here an industrial injury necessitates the modification **or substitution** of an automobile in order to accommodate a wheelchair or artificial member and to restore in part a claimant's former ambulatory ability, such costs may be awarded as 'other apparatus.'" *Id.* (quoting *Fidelity Cas. Co. v. Cooper,* 382 So.2d 1331, 1332 (Fla.Dist.Ct.App.1980) (emphasis added by *Grantham* court)).

In *Brawn v. Gloria's Country Inn,* 698 A.2d 1067 (Me.1997), the Supreme Judicial Court of Maine examined a workers' compensation statute which obliged the employer to provide work-injured claimants with "reasonable and proper medical, surgical and hospital services, nursing, medicines, and mechanical, surgical aids, as needed." ME.REV.STAT. ANN. tit. 39–A, § 206. The obligation was further defined to include "artificial limbs, eyes, teeth, eyeglasses, hearing aids, orthopedic devices and other physical aids made necessary by the injury." ME.REV.STAT. ANN. tit. 39–A, § 206(8). The *Brawn* claimant used a specially adapted wheelchair weighing 300 pounds, which was not transportable in an ordinary vehicle. The employer had voluntarily purchased a specially adapted van for the claimant in 1989. However, in 1994, when the claimant sought payment for a replacement van, the employer agreed only to pay to adapt the van, but not to purchase it.

The *Brawn* court concluded that, in these circumstances, a van was a reasonable and proper mechanical or physical aid as it was reasonably necessary to facilitate the use of the claimant's wheelchair. The court noted that the practical benefit of a 300–pound wheelchair is greatly diminished if the claimant is effectively precluded from traveling beyond the boundaries of her own home. The court thus reasoned that the van, like the wheelchair, was reasonably necessary to provide basic mobility. The court stressed, however, that the statute would not always require that conclusion, because the employee might have access to other methods of transportation, or the employ-

er might offer a reasonable alternative to the purchase of a van. In the court's view, each case must be decided according to its own particular facts and according to the statute's ultimate purpose to provide reasonable relief from the effects of a work-related injury.[34]

Other jurisdictions have deemed the cost of a specially adapted vehicle compensable but have looked to offsetting that cost premised upon the particulars of a given case. For example, in *Crouch v. West Virginia Workers' Compensation Commissioner*, 184 W.Va. 730, 403 S.E.2d 747 (1991), the quadriplegic claimant requested that the employer either buy him a van or pay the difference between the cost of a van and the cost of the claimant's normal mode of transportation prior to his work-related injury. The West Virginia workers' compensation statute provided, in relevant part, an entitlement to "approved mechanical appliances and devices, as may be reasonably required." W. Va.Code § 23–4–3. The court found that the cost of a customized van was compensable under the statute, stating that:

> We believe that an automobile, which is a machine, can be interpreted as a "mechanical appliance" under the statute. Moreover, implicit in this statute is the fact that, for a quadriplegic, an automobile capable of transporting the

3. The court recognized that some jurisdictions permitted employers to deduct the cost of a medium-priced automobile from the purchase price of a specially adapted van but, based on the facts in *Brawn*, the court held that the employer was responsible for the entire cost as there was nothing in the record to support a finding that the claimant would have needed a vehicle regardless of her injury.

4. *Accord Liberty Mut. Ins. Co. and Film Transit v. Chambers*, 76 Ark. App. 286, 64 S.W.3d 775, 777 (2002) (claimant entitled to purchase cost of van and cost of conversion; liability was limited to cost of suitable van, not necessarily a new van, and for costs of van modifications); *Georgia–Pacific Corp. v. James*, 733 So.2d 875, 877 (Miss.Ct.App.1999) ("Just as the utility of the wheelchair would have been substantially limited without modifications having been made to his home, so too is [the claimant's] access to transportation substantially limited without an appropriately modified automobile to accommodate his disability and his wheelchair.") (emphasizing, however, that determination was case-specific, as "[t]here may well be circumstances where the modification of an appropriate and reliable existing vehicle would be acceptable. Each case must be judged upon its own merits.").

petitioner and the accompanying equipment is more than "reasonably required" to be active in our society. Without adequate transportation, the existence of a claimant handicapped like the petitioner is limited at best.

*Crouch*, 403 S.E.2d at 750. The *Crouch* court went on to hold that the term "mechanical appliances" may be interpreted "to extend to a specially converted van for claimants who are quadriplegic as the result of a compensable injury." *Id.* at 751. In support of its decision, the *Crouch* court cited to, *inter alia*, the Florida intermediate appellate decision in *Fidelity and Casualty Co., supra*, the Arizona decision in *Grantham, supra*, and the Commonwealth Court's decision in *Rieger, supra*. Furthermore, the court specifically noted the similarity of Pennsylvania's statutory term "orthopedic appliances" and the West Virginia statutory term "mechanical appliances." *Crouch*, 403 S.E.2d at 751. Nevertheless, the *Crouch* court did not require the employer to pay for the entire cost of the van. Noting the claimant's testimony that he would have owned an automobile regardless of his injury, the court concluded that he was not entitled to the full cost of the van. Rather, the court held that, where a claimant owned or would have owned an automobile in any event, the employer was required to pay only the difference between the specially equipped van and the cost of an average mid-priced automobile of the same model year as the van.

To similar effect is *Meyer v. North Dakota Workers Compensation Bureau*, 512 N.W.2d 680 (N.D.1994). In *Meyer*, the North Dakota Supreme Court held that the cost of adaptive equipment and the necessary additional vehicle cost associated with purchasing a van for the claimant, who was paralyzed from the chest down as the result of a work injury, was compensable under North Dakota's workers' compensation statute. Under that statute, the employer was obliged to provide "artificial replacements," N.D. Cent.Code § 65–05–07, a term including "mechanical aids including braces, belts, casts, or crutches as may be reasonable and necessary due to compensable injury," N.D. Cent.Code § 65–01–02(2). The *Meyer* court reasoned that, "[i]f as part of his rehabilitation

and return to employment, [the claimant] must use adaptive equipment, and if the adaptive equipment can only be used with a van, then the bureau is responsible for the cost of the adaptive equipment and the necessary additional vehicle cost associated with purchasing a van." *Meyer,* 512 N.W.2d at 684 (citing *Crouch, supra; Grantham, supra;* and *Fidelity Cas. Co., supra* ). However, the court noted that, if the claimant had not been injured he still would have needed a vehicle, and therefore, he was entitled only to the added expense associated with buying a van compared to a .regular automobile, and the cost of the adaptive equipment. The claimant was deemed responsible for the cost of the van's luxury conversion, and for an amount equivalent to the cost of an average vehicle, which he might have otherwise owned, of the same year as the van. *Accord Negri v. Cont'l Sales & Serv.,* 139 S.W.3d 565, 571 (Mo.Ct.App.2004) (employer liable only for difference in cost between modified van and average, mid-priced automobile of same year as purchased van).

Other states seem to be less flexible in their interpretation and response. For example, in *Ex parte City of Guntersville,* 728 So.2d 611 (Ala.1998), the claimant, a city police officer, suffered a bullet wound to his back in the line of duty rendering him a paraplegic and confined to a wheelchair. The state's workers' compensation statute required employers to provide "reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment." ALA.CODE § 25–5–77(a). The city argued that it was not obligated to pay for a motor vehicle equipped with a wheelchair lift. The Supreme Court of Alabama held that, because a motor vehicle is not a device that serves to improve a disabled claimant's condition, but rather operates to improve the claimant's functioning, allowing reimbursement for such costs would stretch the workers' compensation statute beyond its intended meaning.

To similar effect is *Weakland v. Toledo Engineering Co., Inc.,* 467 Mich. 344, 656 N.W.2d 175 (2003), where the work-

injured claimant's condition worsened to the point where he needed a motorized cart and a customized van to transport that cart. The claimant sought reimbursement for both the cost and customization of the van pursuant to Michigan's workers' compensation statute, which obligated employers to supply "appliances necessary to cure, so far as reasonably possible, and relieve from the effects of the injury." MICH. COMP. LAWS § 418.315(1). The Supreme Court of Michigan held that the employer was not obligated to provide the van because it was not an appliance. In the court's view, the term appliance encompassed only the necessary modifications made to the van so that it could be operated by the claimant. *Accord R & T Constr. Co. v. Judge,* 323 Md. 514, 594 A.2d 99, 108 (1991) (claimant rendered quadriplegic by work injury denied reimbursement for specially equipped van because van deemed not to be prosthetic appliance, medical apparatus or device under governing statute).

Two intermediate appellate decisions from New York likewise have held that the cost of an automobile was not covered by a workers' compensation statute that obligated the employer to make "payments for 'medicine, crutches and apparatus ... or other devices ... necessary ... to replace, support or relieve a portion or part of the body.'" N.Y. WORKERS' COMP. LAW § 13. *See Kranis v. Trunz, Inc.,* 91 A.D.2d 765, 458 N.Y.S.2d 10 (N.Y.App.Div.1982); *Nallan v. Motion Picture Studio Mechs. Union, Local No. 52,* 49 A.D.2d 365, 375 N.Y.S.2d 164, 168 (N.Y.A.D.1975), *rev'd on other grounds,* 40 N.Y.2d 1042, 391 N.Y.S.2d 853, 360 N.E.2d 353 (1976); *accord Bouge v. SDI Corp.,* 931 P.2d 477 (Colo.Ct.App.1996) (medical "apparatus," as contemplated by workers' compensation statute, COLO.REV.STAT. § 8–42–101(1)(a), must be reasonably necessary for treatment of injury or to provide therapeutic relief from effects of work injury; because van does nothing to care for or remedy quadriplegia and also provides no therapeutic medical relief from symptoms of injury, van is not a compensable medical apparatus).

While these decisions of other jurisdictions construing similar terms in their own workers' compensation statutes are

illuminating, we are mindful that this is not a uniform act and the dispute therefore primarily involves a question of Pennsylvania statutory construction. Section 306(f.1)(1) of the Pennsylvania Workers' Compensation Act provides, in pertinent part, as follows:

(1)(i) The employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed....

(ii) In addition to the above service, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses in accordance with this section....

77 P.S. § 531(1)(i)-(ii). The operative disputed term here is "orthopedic appliances" and our task is to determine whether a modified van qualifies as such an appliance in circumstances like those presented *sub judice*.

The polestar of statutory construction is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a); *see also Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder)*, 575 Pa. 66, 834 A.2d 524, 531 (2003). It is settled that, "[w]hen the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Hannaberry*, 834 A.2d at 531. However, if "the words of the statute are not explicit" on the point at issue:

the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). Many of these statutory construction concerns are subsumed in this Court's recognition that "our basic premise in workmen's compensation matters is that the Workmen's Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Hannaberry*, 834 A.2d at 528 (quoting *Peterson v. Workmen's Comp. Appeal Bd. (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116, 1120 (1991) (collecting cases)). Accordingly, borderline interpretations of the Act are to be construed in the injured party's favor. *Id.* (quoting *Harper & Collins v. Workmen's Comp. Appeal Bd. (Brown)*, 543 Pa. 484, 672 A.2d 1319, 1321 (1996)). Finally, we note that, in ascertaining legislative intent, there is a presumption that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(1).

WEBSTER'S NEW WORLD Dictionary 1005 (2d college ed.1986) defines "orthopedics" as "the branch of surgery dealing with the treatment of deformities, diseases, and injuries of the bones, joints, muscles, etc." "Appliance," a commonly understood word, is defined in the same source as "a device or machine for performing a specific task, esp. one that is worked mechanically or by electricity." *Id.* at 67, 834 A.2d 524. The term "orthopedic appliance" obviously is a broad one; indeed, it is one that no doubt was made deliberately general to account for innovations in the treatment, rehabilitation, and support of work injuries. Considering the remedial nature of the Act, and its humanitarian purpose, we conclude that, in proper circumstances, a van modified to make it operable by a person who has suffered a devastating work injury, and who otherwise would not be able to operate a motor vehicle, qualifies as an orthopedic appliance.

Depending upon the circumstances of the individual, a van (indeed any vehicle) could be viewed as a necessity, a luxury, or something in between. What matters here is that appellant

does not seek the modified van at issue as a "lifestyle choice," or for the reasons other people might purchase a van or a sport utility vehicle. For appellant, the need for the modified van is a direct result of his work injury and, in his circumstances at least, it directly addresses the lack of mobility caused by that work injury. Without his wheelchair, appellant would be confined to a bed or a room; without a van equipped to handle his wheelchair, appellant would be confined to the limited area he could travel in that wheelchair. Whatever a van may represent to others fortunate to have unrestricted powers of ambulation, in circumstances such as these, the van indeed is an appliance that addresses and is directly responsive to the permanent orthopedic issue brought on by appellant's work injury.

Moreover, there is some force in appellant's argument that a modified van is critical to his ongoing care and health, as he must travel for the follow-up medical care that has become a permanent necessity in his condition. Just as importantly, there is force in appellant's argument that the remedial purposes of the Act are not satisfied by the narrowest approach to what it is that will make an injured person nearer to whole. The wheelchair and the modified van appellant has sought from Employer do not begin to "compensate" appellant for the quadriplegia that resulted from his work injury. Appellant has lost the ability to stand, to walk, to run, to operate an ordinary vehicle, to ride in a friend's car, to hail a cab. He has lost the free mobility he had, and that others take for granted. To a person in appellant's condition, the van is crucial to restore some small measure of the independence and quality of life that existed before the work injury. Because the present restrictions on appellant's life and mobility were caused by his service to his employer, and a modified van directly addresses and helps to remediate that very harm, we conclude that a wheelchair accessible van qualifies under the broad definition of orthopedic appliances employed in the Act.[5]

5. To the extent that *Petrilla, supra,* held otherwise, that case is hereby disapproved.

We find further support for our conclusion in the unreasonable situation that would result if we were to accept the Commonwealth Court majority's absolutist view that a van can never be deemed an orthopedic appliance. The parties agreed that the cost of retrofitting a van to be wheelchair accessible must be borne by the employer as a compensable orthopedic appliance. Therefore, as the dissenting opinion below recognized, a holding that the employer is never responsible for the cost of the van that would be retrofitted would result in two classes of claimants: those claimants who can afford to purchase a van will receive the retrofitting benefits that allow them to become mobile, while those less financially fortunate, who lack the funds to purchase a van, cannot avail themselves of the retrofitting benefit. The suggestion in the majority opinion below that this disparity "is a product of [the claimant's] own financial circumstances," and not the injury, ignores that the very nature of the claimant's work injury severely restricts the type of vehicle he can operate. A person such as appellant cannot simply purchase the smallest and most economical vehicle, much less the vehicle of his choice. Instead, as a direct result of his work-caused quadriplegia, appellant is constrained to driving only a large, specially modified van that allows him to enter while seated in his wheelchair and to remain seated in the wheelchair while driving. Put another way, appellant may only avail himself of a vehicle specifically chosen for its capacity to be retrofitted to accommodate his other indispensable prosthetic device—his wheelchair. A claimant such as appellant therefore faces an unavoidable cost which is not a product of his economic circumstances, but of his work injury. We agree with the dissent below that the disparity that the Commonwealth Court majority deemed tolerable requires an unreasonable reading of the Act, one that is at odds with the Act's remedial purpose.

Our conclusion that a modified van may qualify as an orthopedic appliance, however, does not end the inquiry. The Act is remedial, but it does not authorize windfalls. As some of our sister states have recognized, the extent of an employer's liability may and should vary depending on the

particular circumstances affecting the claimant. Nothing in the Act, for example, requires that an orthopedic appliance—the van here—be brand new. In addition, the claimant's prior lifestyle and resources may be relevant in fixing the appropriate expense owed by the employer to secure an appropriate vehicle. Thus, the circumstances of a claimant who already owned a van prior to his injury will be different from the circumstances of a claimant who owned a smaller vehicle not suitable for wheelchair-accessible modification (but perhaps suitable for trading-in to offset the cost of a van), or a claimant who owned no car at all, but relied upon walking, public transportation or other means of travel. We agree with those courts that, while recognizing that a modified van is a necessary appliance or apparatus for some claimants, concomitantly recognized that the particular circumstances of the claimant must be considered in determining the precise obligation of the employer.

Our review of the record before the WCJ reveals that appellant did not have access to a vehicle that was adequate to transport him and his wheelchair. *See* WCJ Decision at 4 ("Other than the rental vans and the van finally purchased, [appellant] had no other vehicles which would enable [appellant] to get to his medical appointments; transportation for this purpose had not been provided by the Carrier."). However, it appears that the parties did not focus on appellant's circumstances prior to his injury—*i.e.*, whether he owned and regularly operated a vehicle, the age and type of the vehicle, its value, *etc.* In these circumstances, we will remand to the WCJ for a determination of Employer's liability toward the purchase of the van, consistently with the principles set forth in this Opinion.

## II. Cost Containment

The cost containment provision of the Act reads, in pertinent part, as follows:

[A] provider shall not require, request or accept payment for the treatment, accommodations, products or services in excess of one hundred thirteen per centum of the ...

applicable fee schedule.... If the prevailing charge, fee schedule, recommended fee, inflation index charge, DRG payment or any other reimbursement has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of the payment may not exceed eighty per centum of the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided.

77 P.S. § 531(3)(i). The statute thus provides for an eighty percent limitation for "treatment, accommodations, products or services" that are not calculated under the Medicare program. The parties agree that there is no Medicare calculation governing the costs at issue here.

Appellant argues that the Commonwealth Court majority's holding that this provision caps Employer's obligation at eighty percent of the cost of the van rentals and retrofitting of the new van (and now the appropriate cost of the van, per this Court's holding on the first question on appeal) must be reversed. Appellant contends that the Act requires an employer/insurer to pay for medical expenses related to a work injury and does not require an injured worker to pay twenty percent of any portion of any medical benefit. Indeed, appellant notes, Section 306(f.1)(7) of the Act states, in pertinent part, that "[a] provider shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer." 77 P.S. § 531(7). Thus, appellant argues that it is unlawful under the Act to require him to pay the difference between what the employer pays and what the provider charges.

More fundamentally, appellant also contends that the cost containment provision in Section 306(f.1)(3)(i) applies only to medical providers, and not to car dealers or injured workers. Thus, in appellant's view, the cost containment provision does not limit what a claimant may recover for such costs, nor does it limit the obligation of employers and their compensation

carriers. Moreover, appellant contends that the Commonwealth Court's holding that Employer's obligation is capped at eighty percent conflicts with both *Villanova University v. Workers' Compensation Appeal Board (Mantle)*, 783 A.2d 366 (Pa.Cmwlth.2001), *alloc. denied*, 568 Pa. 730, 797 A.2d 919 (2002) and *Furnival State Machinery/Transamerica Insurance Group v. Workers' Compensation Appeal Board (Slye)*, 757 A.2d 433, 436 (Pa.Cmwlth.2000), *alloc. denied*, 565 Pa. 653, 771 A.2d 1289 (2001), both of which suggest that the cost containment provision governs only what a medical provider may charge.

Supporting appellant's argument, *amicus curiae* PaTLA adds that it is significant that the cost containment section is limited to "providers" because the Commonwealth has the power to regulate providers by virtue of the fact that they are licensed. PaTLA contends that the cost containment provision by its terms limits charges but does not limit reimbursement.

Employer responds by focusing on the broader statutory scheme, and then contrasting appellant's conduct with that scheme. Employer notes that its liability to provide payment for items covered by Section 306(f.1)(1)(i) and (ii) of the Act is set forth at Section 306(f.1)(3)(i), which limits the amount of the charges, in this case, to eighty percent of the prevailing charge in the relevant area. Employer further notes that Section 306(f.1)(5) of the Act contemplates that a provider who disputes the amount charged to the employer "shall file an application for fee review" with the Department of Labor and Industry. 77 P.S. § 531(5). The statute further directs that the provider "shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer." 77 P.S. § 531(7).

Employer contends that, by paying the providers of the van rentals and the new van and its modifications directly and in full, appellant simply disregarded the statutory scheme, which envisioned that relevant providers would submit bills for compensable medical expenses to insurers for payment after re-

pricing to fee cap levels pursuant to Section 306(f.1)(5). Thus, Employer argues that appellant's present claim for the remaining twenty percent differential is nothing more than an attempt to extricate himself from the consequences of his own improvident actions.

Employer further argues that Section 306(f.1)(3)(i) covers "treatment, accommodations, products or services" of "a provider" without limiting the type of provider which is subject to the fee caps. Respecting the statement in *Furnival* that Section 306(f.1)(3)(i) applies to medical providers only, Employer argues that the statement was purely *dictum* because the issue in *Furnival* was whether that Section superseded Section 319 of the Act, which pertains to subrogation. Employer argues that the *Villanova* case is similarly inapplicable because that case also posed a subrogation issue. Employer contends that both cases held that Section 306(f.1)(3)(i) did not limit subrogation of payments made by an employer or insurance company on the basis that an injury or disability was not compensable, because Section 319 specifically states that such payor "shall be subrogated ... to the amount so paid." 77 P.S. § 671. Employer asserts that payments made by appellant to the providers herein do not satisfy the criteria for subrogation since appellant is not an employer or an insurance company, and Employer here accepted liability for appellant's injury from the outset.

Finally, Employer insists that appellant's interpretation of Section 306(f.1)(3) as limited to "medical" providers in the strictest sense is inconsistent with the humanitarian purpose of the Act, a purpose appellant cites in arguing for his expanded interpretation of Section 306(f.1)(1)(i) and (ii). Employer argues that the majority below was correct that, if the fee cap provisions do not apply, there is no basis for any reimbursement whatsoever under the Act because there was no medical provider involved. Employer explains that if appellant's interpretation of the Act is accurate, he should be deemed liable for one hundred percent of the van-related costs.

Supporting Employer's argument, *amicus curiae* PDI notes that reasonable and necessary medical expenses were made subject to a fee schedule based upon Medicare reimbursement for the first time in 1993. The only caveat to the imposition of the reimbursement schedule was the situation where a particular treatment, accommodation, product or service was not calculated under the Medicare program. In that case, the amount of the payment may not exceed eighty percent of the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service, in the geographic area where the treatment or service is provided. PDI states that compliance with these medical reimbursement provisions are mandatory and are placed upon **the provider** of the service. The Act provides a procedure to submit medical expenses for utilization review to address disputes respecting the reasonableness or necessity of medical expenses.

PDI further notes that appellant sought and purchased his new van for retrofitting without consideration of the medical fee reimbursement requirements of the Act. Since retrofitting is not a product or service specifically identified in the Medicare reimbursement schedule, PDI argues, the eighty percent provision must be deemed applicable here. In light of the statutory mandate that a provider may not hold employees liable for costs related to care or service arising from a work injury, PDI posits that the providers of the services violated the terms of the Act.

Our analysis begins and ends with the plain language of the cost containment provision. Section 306(f.1)(3)(i) of the Act provides, in pertinent part, as follows:

For purposes of this clause, **a provider** shall not require, request or accept payment for the treatment, accommodations, products or services in excess of ... eighty per centum of the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided.

77 P.S. § 531(3)(i) (emphasis added). Section 109 of the Act defines "provider" as "a health care provider." 77 P.S. § 29. Section 109, in turn, defines "health care provider" as follows:

any person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor or pharmacist and an officer, employe or agent of such person acting in the course and scope of employment or agency related to health care services.

*Id.* Obviously, an automobile dealer does not provide "health care services" within the meaning of this definition.

 Unlike Employer and the Majority below, we see no tension between the determination that a van is an orthopedic appliance within the meaning of Section 306(f.1)(1) of the Act and the determination that the source of the van is not a provider within the meaning of Section 306(f.1)(3)(i) of the Act. Unlike subsection (3)(i), subsection (1) does not speak solely in terms of providers. While the first part of subsection (1) requires employers to provide payment for "reasonable surgical and medical services" and "services rendered by physicians or other health care providers," 77 P.S. § 531(1)(i), the second part of subsection (1) states that "[i]n **addition to the above service,** the employer shall provide payment for," *inter alia,* orthopedic appliances, 77 P.S. § 531(1)(ii) (emphasis added). Thus, whereas the provision of the Act requiring employers to pay for orthopedic appliances does not require the existence of a health care provider, the cost containment provision of the Act clearly does. Because appellant acquired his orthopedic appliance from an entity that is not a health care provider, the cost containment provision does not apply. Accordingly, Employer is liable for the entirety of all relevant costs in this instance.

For the foregoing reasons, the decision below is reversed, and the matter is remanded to the WCJ for proceedings consistent with this Opinion.

Justice SAYLOR and BAER, Justice TODD and Justice McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

All are sympathetic with claimant David Griffiths' condition and special needs, but the statutory language at issue does not support the majority's conclusion a 2000 Ford Windstar is an "orthopedic appliance." Therefore, I respectfully dissent.

When determining the breadth to be given this term, we must be guided by the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* and the words of a statute should be interpreted according to their common usage. 1 Pa.C.S. § 1903. We should not interpret statutes with disregard of common meaning simply to reward a clever argument or accomplish a comfortable result. Here, the statute requires an employer to pay for "medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses...." 77 P.S. § 531(1)(ii). A vehicle is simply not *ejusdem generis* with the other items in the statute for which the legislature has required an employer to pay. Perhaps we could shoehorn into "orthopedic appliance" the items used to accomplish the retrofitting of a van; however, the van itself simply cannot be made to fit any reasonable understanding of the term.

There is a significant difference between requiring an employer to provide appliances to outfit a claimant's van, and requiring the employer to buy a van for a claimant in the first place. Under the sweeping decision of the majority, employers must hereafter provide appliances that, the majority holds, include a vehicle. Many claimants will be undoubtedly surprised to find they could use just such an appliance. If there is to be a significant expansion of compensation payable, it should be accomplished by the General Assembly, in clear terms, not by a court calling a van an orthopedic appliance. This claimant undoubtedly could use a van, but the legislature did not require his employer to give him one. It required treatment and supplies, but no vehicle. We, who have no means of knowing the financial and collateral consequences of

this expansion of obligation, may not displace the legislature and change the statute to require more.

One may buy an "orthopedic appliance" in many places—the Ford dealership is not one of them.